*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-AA-0047

DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT, PETITIONER,

v.

PAUL PORTER, RESPONDENT.

Petition for Review of a Decision
of the Office of Administrative Hearings
(2021-MPD-000002)

(Argued February 16, 2023                          Decided March 13, 2025)

*Jeremy R. Girton*, Assistant Attorney General for the District of Columbia, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Karl A. Racine*, Attorney General for the District of Columbia at the time the brief was filed, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the briefs, for petitioner.

*Paul Porter*, pro se.

*Stefanie Schneider*, Public Defender Service, with whom *Samia Fam*, Public Defender Service, and *Alice Wang*, Public Defender Service, were on the brief, as amicus curiae supporting respondent.

Before EASTERLY and MCLEESE, *Associate Judges*, and THOMPSON,[*] *Senior Judge*.

Opinion for the court by *Associate Judge* MCLEESE.

Concurring opinion by *Senior Judge* THOMPSON at page 38.

Dissenting opinion by *Associate Judge* EASTERLY at page 39.

MCLEESE, *Associate Judge*: Petitioner, the District of Columbia Metropolitan Police Department ("MPD"), seeks review of an order by an Administrative Law Judge ("ALJ") from the Office of Administrative Hearings ("OAH"). That order overturned MPD's denial of respondent Paul Porter's application for a firearm registration certificate. We reverse OAH's order and uphold MPD's denial of Mr. Porter's application.

## I. Factual and Procedural Background

Except as noted, the following appears to be undisputed. Mr. Porter twice applied to register a firearm, but MPD denied Mr. Porter's applications on the ground that Mr. Porter had previously been convicted of a weapons offense in

---

[*] Senior Judge Fisher was originally assigned to this case. Following his retirement on August 22, 2024, Judge Fisher was replaced by Senior Judge Thompson.

Maryland and thus was precluded from registering a firearm by D.C. Code § 7-2502.03(a)(2) (firearm registration certificate shall not be issued to any person unless person "[h]as not been convicted of a weapons offense").

The records of the Maryland case at issue were expunged in 2020, so the full record of the proceedings in Maryland is not part of the record in this case. Although MPD raises concerns in this court about the documents Mr. Porter submitted concerning the Maryland case, MPD did not raise such concerns before OAH. We assume the accuracy of the documents for purposes of our decision.

The documents before OAH indicate that Mr. Porter pleaded guilty in Maryland in 2009 to a misdemeanor offense of transporting a handgun on a highway. The Maryland trial court initially sentenced Mr. Porter in 2010 to three years of incarceration, suspended in favor of three years of supervised probation. After completing the period of probation, Mr. Porter moved for reconsideration of his sentence. In 2015, the Maryland trial court granted reconsideration pursuant to Md. Code Ann., Crim. Proc. § 6-220 ("Probation before judgment").

Section 6-220(b) authorizes a judge sentencing a defendant who has pleaded guilty or has been found guilty to "stay the entering of judgment, defer further proceedings, and place the defendant on probation before judgment." Md. Code

Ann., Crim. Proc. § 6-220(b)(1), (c)(1).  If the defendant fulfills the conditions of probation, then the trial "court shall discharge the defendant from probation."  *Id.* at § 6-220(i)(1).   In granting reconsideration, the Maryland trial court ordered Mr. Porter's "guilty finding and sentence dated March 26, 2010," "stricken," stayed entry of judgment, and placed Mr. Porter on unsupervised probation for forty-eight hours.  The record in this case does not appear to indicate whether the Maryland trial court subsequently issued an order discharging Mr. Porter from probation, but we assume for current purposes that the trial court did so.

Mr. Porter sought review before OAH of MPD's more recent denial of Mr. Porter's application for a registration certificate.  OAH concluded that MPD had impermissibly denied Mr. Porter's application.   OAH reasoned that (a) under Maryland law, a discharged sentence of probation before judgment is not viewed as a conviction, Md. Code Ann., Crim. Proc. § 6-220(i)(3) (discharge "shall be without judgment of conviction and is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime"); and (b) failing to follow Maryland law on that point would deny Maryland law "full faith and credit."

## II. Analysis

### A. Full Faith and Credit

The Full Faith and Credit Clause of the United States Constitution provides in pertinent part that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. Art. IV, § 1. "Although the District of Columbia is not a state, the Full Faith and Credit Clause is also applicable to the District." *J.J. v. B.A.*, 68 A.3d 721, 726 (D.C. 2013). The scope of the Full Faith and Credit Clause is an issue of law that we decide de novo. *Ahmad Hamad Al Gosaibi & Bros. Co. v. Std. Chartered Bank*, 98 A.3d 998, 1004 (D.C. 2014); *see also Vizion One, Inc. v. D.C. Dep't of Health Care Fin.*, 170 A.3d 781, 791 (D.C. 2017) (OAH "is vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies and thus lacks the subject-matter expertise justifying the deference to agency interpretations of statutes or regulations") (internal quotation marks omitted).

The Full Faith and Credit Clause "does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) (internal quotation marks omitted). One "who challenges the power of one

State to enforce in its own courts its own statutes on [Full Faith and Credit Clause] grounds carries the burden of showing that of the conflicting interests involved those of the foreign state are superior to those of the forum." *State Farm Mut. Auto Ins. Co v. Duel*, 324 U.S. 154, 160 (1954) (internal quotation marks omitted).

Neither Mr. Porter nor the Public Defender Service ("PDS") as amicus curiae in support of Mr. Porter attempts to carry the burden of establishing that Maryland has an interest that outweighs the District's interest in determining the meaning of the term "conviction" for the purpose of determining who may register a firearm in the District of Columbia. We hold that the Full Faith and Credit Clause permits the District of Columbia to determine as a matter of District of Columbia law whether the proceedings in Maryland mean that Mr. Porter "has . . . been convicted" for purposes of D.C. Code § 7-2502.03(a)(2); *cf. Yanez-Popp v. INS*, 998 F.2d 231, 237 (4th Cir. 1993) (holding that Board of Immigration Appeals "does not violate the Full Faith and Credit clause of the Constitution by not construing 'conviction' as do the Maryland courts").

**B. The Meaning of "Has . . . Been Convicted" in Section 7-2502.03(a)(2)**

**1. Standard of review**

This court generally reviews legal questions of statutory interpretation de novo. *District of Columbia v. ExxonMobil Oil Corp.*, 172 A.3d 412, 418 (D.C. 2017). MPD argues, however, that this court should give deference to MPD's interpretation of Section 7-2502.03(a)(2) because MPD is charged with the Section's enforcement. PDS argues that for various reasons MPD's interpretation is not entitled to deference. We need not decide whether MPD's interpretation would warrant deference, because considering the issue de novo we agree with MPD that Mr. Porter "has . . . been convicted" within the meaning of Section 7-2502.03(a)(2).

"When interpreting statutes, we first look to see whether the statutory language at issue is plain and admits of no more than one meaning." *Booz Allen Hamilton Inc. v. Off. of Tax & Revenue*, 308 A.3d 1205, 1209 (D.C. 2024) (brackets and internal quotation marks omitted). "The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* (internal quotation marks omitted). "We consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation." *Id.* (internal quotation marks omitted).

## 2. Probation before judgment as a conviction under Section 7-2502.03(a)(2)

We first note two issues that we do not decide: (1) whether Mr. Porter could be viewed as having been convicted for purposes of Section 7-2502.03(a)(2) based on the original 2010 conviction that was "stricken" in 2015; and (2) whether Mr. Porter's 2009 guilty plea by itself suffices to establish that Mr. Porter has been convicted for purposes of Section 7-2502.03(a)(2). Rather, we hold that the Maryland court's 2015 imposition of probation before judgment constitutes a conviction for purposes of Section 7-2502.03(a)(2).

### a. Probation before judgment under Maryland law

As previously noted, Maryland's probation-before-judgment statute authorizes a judge sentencing a defendant who has pleaded guilty or has been found guilty to "stay the entering of judgment, defer further proceedings, and place the defendant on probation before judgment." Md. Code Ann., Crim. Proc. § 6-220(b)(1), (c)(1). A trial court imposing probation before judgment may also order the defendant to pay a fine or penalty, *id.* § 6-220(d)(1)(i), and/or to serve a term of custodial confinement or imprisonment, *id.* § 6-220(d)(4). The trial court may grant probation before judgment if doing so would serve "the best interests of the defendant and the public welfare." *Id.* § 6-220(b)(1)(i), (c)(1)(i). Probation

before judgment can apparently be imposed for many offenses. *Id.* § 6-220(f) (listing certain offenses as to which probation before judgment may not be imposed). By consenting to probation before judgment, "the defendant waives the right to appeal at any time from the judgment of guilt." *Id.* § 6-220(g)(1).

If the defendant fulfills the conditions of probation, then the trial "court shall discharge the defendant from probation." Md. Code Ann., Crim. Proc. § 6-220(i)(1). If the defendant is so discharged, the disposition of probation before judgment is "without judgment of conviction" and generally "is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime." *Id.* § 6-220(i)(3). In other words, under Maryland law, a discharged sentence of probation before judgment generally has "the effect of wiping the criminal slate clean." *Jones v. Baltimore City Police Dep't*, 606 A.2d 214, 218 (Md. 1992).

In some circumstances, however, Maryland treats probation before judgment as a conviction. For example, a defendant who has been sentenced to probation before judgment for a crime of violence or a "domestically related crime" is treated as having a disqualifying conviction precluding the possession of regulated firearms. Md. Code Ann., Pub. Safety §§ 5-133(b)(1), 5-101(b-1)(1). It appears to be

undisputed that Mr. Porter's sentence of probation before judgment would not disqualify Mr. Porter from registering a firearm in Maryland. As we have already explained (and as the dissenting opinion agrees), whether Mr. Porter's sentence of probation before judgment precludes Mr. Porter from registering a firearm in the District of Columbia is ultimately a matter of District of Columbia law. *See supra* at 5-6; *infra* at 63. In answering that question under District of Columbia law, however, it is important to understand the attributes of probation without judgment under Maryland law.

Under Maryland law, probation before judgment is a sentence and a final judgment for purposes of appellate review. *See, e.g.*, *Carter v. State*, 996 A.2d 948, 957 (Md. Ct. Spec. App. 2010) (probation before judgment is sentence that could be challenged as illegal); *Jones*, 606 A.2d at 218 (probation before judgment "may constitute a final judgment within the meaning of a statute governing appeals").

Probation before judgment can be imposed as an initial sentence, but Maryland trial courts also sometimes impose probation before judgment when reconsidering a previously imposed sentence. *E.g., Molter v. State*, 28 A.3d 797, 807 (Md. Ct. Spec. App. 2011). As previously noted, the order of probation before

judgment in this case was imposed on reconsideration of the sentence originally imposed on Mr. Porter in 2010.

We note a wrinkle in this case. According to the available records, when granting reconsideration in this case, the trial court ordered Mr. Porter's "guilty finding and sentence dated March 26, 2010," "stricken." Similar terminology also appears in some other Maryland decisions. *See, e.g.*, *Lamb v. Kontgias*, 901 A.2d 860, 861 (Md. Ct. Spec. App. 2006) (trial court "struck the guilty finding" and granted probation before judgment). Other Maryland cases refer instead to striking the prior conviction when granting reconsideration of a prior sentence and imposing probation before judgment. *See, e.g.*, *Molter*, 28 A.3d at 807 (trial court "struck out the original conviction and substituted a finding of probation before judgment"). It seems to us that references to striking the guilty plea or finding of guilt when granting probation before judgment are potentially confusing. Probation before judgment cannot be imposed unless there is a plea of guilty or a finding of guilty. Md. Code Ann., Crim. Proc. § 6-220(b)(1), (c)(1). Moreover, probation before judgment is referred to as a "judgment of guilt." *Id.* § 6-220(g)(1). Despite the reference by the trial court in this case to striking the "guilty finding and sentence dated March 26, 2010," we understand this to be a case in which Mr. Porter's 2009 guilty plea remained in effect as the basis upon which the trial court imposed the

sentence of probation before judgment. *See generally Motor Vehicle Admin. v. Jaigobin*, 991 A.2d 1251, 1256 (Md. 2010) (probation before judgment left adjudication of guilt undisturbed); *cf. Yanez-Popp*, 998 F.2d at 237 (although Maryland court "struck" guilty finding when granting probation before judgment, finding of guilt still existed for purposes of determining whether defendant had conviction within meaning of federal immigration statute). We note that we do not understand either Mr. Porter or PDS to argue in this case that Mr. Porter should be viewed as someone as to whom there is no finding of guilt with respect to the Maryland offense.

### b. Plain meaning of "convicted" in isolation

Section 7-2502.03(a)(2) uses the word "convicted," but we focus (as the litigants do) on the alternative form "conviction." Considered in isolation, the word "conviction" is ambiguous because it can mean, among other things, "either the finding of guilt or the entry of a final judgment on that finding." *Deal v. United States*, 508 U.S. 129, 131 (1993). If the word "convicted" in Section 7-2502.03(a)(2) means "found guilty," then defendants would be disqualified from registering a firearm as soon as they pleaded guilty to or were found guilty of a disqualifying offense. As noted, we do not reach that issue, and

we express no view about it. Rather, we assume for purposes of this decision that a conviction for purposes of Section 7-2502.03(a)(2) requires something more than a finding of guilt.

If we assume that the term "convicted" in Section 7-2502.03(a)(2) requires something more than a finding of guilt, the question then becomes what additional is required. Here too ambiguity arises when the word "conviction" is considered in isolation. When interpreting the word "conviction" to require something more than a finding of guilt, courts refer to that additional requirement in varying ways, sometimes referring to a judgment, sometimes referring to a sentence, and sometimes referring to both. *See, e.g.*, *Langley v. United States*, 515 A.2d 729, 733 (D.C. 1986) (for purposes of D.C. Code § 14-305(b) (governing impeachment of witnesses), witness "has been convicted" only if there is "judgment of conviction based on a sentence") (quoting Section 14-305(b)); *id.* at 734 ("[A] final, appealable judgment of conviction means the sentence."); *People ex rel. Grogan v. Lisinski*, 446 N.E.2d 1251, 1254 (Ill. App. Ct. 1983) (in context of removal from elected office, "the term 'conviction' contemplates more than a mere finding of guilt. . . . The trial process ends and the accused is 'convicted' when the sentence is imposed").

That lack of precision is understandable because the sentence and the judgment in a criminal case are often treated as the same thing. *See, e.g.*, *Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."). In some settings, however, the two concepts seem to diverge. *See, e.g.*, D.C. Code § 48-904.01(e)(1) (for certain drug offenders who have been found guilty, trial court may, "without entering a judgment of guilty," defer further proceedings and place defendant on probation). Whether to view dispositions in such settings as convictions appears to depend on context rather than to be a matter of the unambiguous meaning of the term "conviction" considered in isolation. *Compare, e.g.*, *Yanez-Popp*, 998 F.2d at 237-38 (Maryland disposition of probation before judgment was "conviction" for purposes of federal immigration statute), *with, e.g.*, *Twitty v. United States*, 541 A.2d 612, 613-14 (D.C. 1988) (per curiam) (where witness was placed on probation without entry of judgment of conviction, witness was not "convicted" within meaning of D.C. Code § 14-305(b) (governing impeachment of witnesses)).

Maryland's probation-before-judgment statute seems to be another context in which the concepts of sentence and judgment diverge. As previously noted, that statute requires that (a) the defendant have pleaded guilty or been found guilty and (b) the trial court sentence the defendant to probation. Md. Code Ann., Crim. Proc.

§ 6-220(b)(1), (c)(1). Moreover, also as previously noted, Maryland treats a disposition under Section 6-220(b) as a judgment of conviction for certain purposes, including for purposes of disqualification of certain offenders from firearm possession. *E.g., Carter*, 996 A.2d at 957; *Jones*, 606 A.2d at 218. On the other hand, Maryland law refers to a disposition under Section 6-220(b) as probation "before" judgment. Md. Code Ann., Crim. Proc. § 6-220(b)(1), (c)(1).

In sum, we conclude that it is unclear from the meaning of "convicted" in isolation whether a defendant who has been sentenced to probation before judgment under Section 6-220(b) "has . . . been convicted" for purposes of Section 7-2502.03(a)(2).

### c. Statutory context, statutory purpose, and legislative history

We focus first on the provision that immediately follows Section 7-2502.03(a)(2). D.C. Code § 7-2502.03(a)(3) disqualifies persons who are under indictment for certain offenses, including weapons offenses. An indictment requires only a finding of probable cause. *Miles v. United States*, 483 A.2d 649, 653 (D.C. 1984). In contrast, probation before judgment under Section 6-220(b) requires either a plea of guilty or a finding of guilt beyond a reasonable doubt. Md. Code Ann., Crim. Proc. § 6-220(b)(1), (c)(1). Moreover, a defendant who accepts

probation before judgment agrees not to challenge the judgment of guilt and is sentenced. *Id.* § 6-220(b)(1), (c)(1), (g)(1). In our view, it would be quite strange for the D.C. Council to prohibit firearm registration by people who are under indictment for a disqualifying weapons offense but not by people who have pleaded guilty to or been found guilty of such an offense, who have agreed not to challenge that judgment of guilt, and who have been sentenced for their conduct.

The Supreme Court of the United States made essentially the same point in *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103 (1983). In that case, the Supreme Court was interpreting the phrase "has been convicted" in the then-applicable version of 18 U.S.C. § 922. *Dickerson*, 460 U.S. at 105. Among other things, that provision disqualified an applicant "who has been convicted . . . of a crime punishable by imprisonment for a term exceeding one year" from obtaining a license to import, manufacture, or deal in firearms. *Id.* at 106 (quoting 18 U.S.C. § 922(g), (h)). One of the issues the Supreme Court decided was whether a disposition under an Iowa statute quite similar to Maryland's probation-before-judgment statute constituted a conviction for purposes of Section 922. *Id.* at 107 & n.3, 111-14 (Iowa law provided that trial court could defer judgment and place defendant who had pleaded guilty or had been found guilty on probation). In holding that such a disposition was a disqualifying conviction, the Supreme Court noted that under

Section 922 "conviction is not necessary for disqualification. The mere existence of an outstanding indictment is sufficient . . . . Congress was reaching far and was doing so intentionally." *Id.* at 115-16; *see also id.* at 112 n.6 ("It is significant that [Section 922 applies] not only to a person convicted of a disqualifying offense but also to one who is merely under indictment for such a crime.").

*Dickerson* emphasizes another feature that Section 922 and Section 7-2502.03(a)(2) share: both provisions are directed at keeping firearms out of the hands of persons whom the legislature deemed unsuitable to possess firearms. *Dickerson*, 460 U.S. at 112 (in Act containing pertinent language of Section 922, "Congress sought to rule broadly—to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society") (internal quotation marks omitted).

Section 7-2502.03(a)(2) was enacted in 1976 as part of the Firearms Control Regulations Act of 1975 ("FCRA"), 23 D.C.M.R. 1091, 1100, § 203(a)(2) (Aug. 10, 1976); 23 D.C.M.R. 2464 (Oct. 8, 1976). FCRA's legislative history demonstrates that the D.C. Council intended to protect public safety by restricting the kinds of people who could register firearms. *See* D.C. Council, Report on Bill No. 1-164 at 25 (Apr. 21, 1976) ("The bill sets forth new and stringent criteria in order to relegate

guns with legitimate uses in an urban area to demonstrably responsible types of persons."); *id.* at 35-36 (provision that became Section 7-2502.03(a) establishes "personal criteria" "designed to promote a situation in the District of Columbia wherein registerable firearms, being lethal by nature, can only be registered by persons whose personal and social histories do not indicate a susceptibility on their parts to use any firearm in a manner which would be dangerous to themselves or other persons").

We see no reason why the D.C. Council would have wanted to permit persons who have pleaded guilty to or been found guilty of a disqualifying weapons offense, who have agreed not to challenge their guilt, and who have been sentenced for their conduct to nevertheless register a firearm. In other words, interpreting Section 7-2502.03(a)(2) as inapplicable to defendants sentenced to probation before judgment for a disqualifying weapons offense would undermine the statute's apparent purpose. *See generally Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C. 2006) ("We must also be mindful that our interpretation is not at variance with the policy of the legislation as a whole . . . .").

PDS, however, points to a different aspect of Section 7-2502.03(a)(2): that Section 7-2502.03(a)(2) imposes a civil disability. PDS argues that it was settled at

common law that the word "conviction" meant more than merely an adjudication of guilt when that word was used in statutes imposing civil disabilities. We are unpersuaded by that argument for several reasons.

First, as previously noted, Section 7-2502.03(a)(2) was enacted in 1976. At that time, neither the Supreme Court nor this court had recognized the existence of an individual right to keep and bear arms. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 602 (2008) (holding for first time that Second Amendment protects individual right to keep and bear arms); *Sandidge v. United States*, 520 A.2d 1057, 1058 (D.C. 1987) ("We agree with numerous other courts that the Second Amendment guarantees a collective rather than an individual right.") (internal quotation marks omitted), *overruled by Heller*, 554 U.S. at 602. We thus see no reason to believe that the D.C. Council in 1976 would have viewed the disqualification at issue as depriving people of a "valuable" individual right or privilege. *See generally, e.g.*, *Myers v. State*, 496 A.2d 312, 314 (Md. 1985) (where statute deprives persons of "valuable rights and privileges" based on conviction, courts infer that legislature did not intend such deprivation "without a final judgment and sentence") (internal quotation marks omitted).

It follows that there is no reason to infer that the D.C. Council in 1976 intended the word "convicted" to have a narrow meaning.  To the contrary, we have described FCRA as "a regulatory measure[] adopted pursuant to the District's local police power," "intended to broaden and increase the limitations on firearms within the District." *Townsend v. United States*, 559 A.2d 1319, 1321 (D.C. 1989) (internal quotation marks omitted); *see also McIntosh v. Washington*, 395 A.2d 744, 753-54 (D.C. 1978) (FCRA's purpose was "to freeze the handgun population within the District by expanding and strengthening preexisting firearm registration standards") (internal quotation marks omitted).  As we have already indicated, FCRA's legislative history is to the same effect.

Second, many of the cases on which PDS relies involve the question whether a guilty plea constitutes a "conviction."  As we have previously noted, a defendant who is sentenced to probation before judgment under Section 6-220(b) has not merely pleaded guilty or been found guilty; the defendant also will have agreed not to contest that judgment of guilt and will have been sentenced.  In our view, PDS has not demonstrated that there was a well-settled principle of common law that dispositions of that kind did not constitute convictions, even for purposes of statutes imposing civil disabilities.

We acknowledge that in *Twitty*, 541 A.2d at 612, we held that a disposition of probation before judgment did not constitute a conviction for purposes of D.C. Code § 14-305, which governs the impeachment of witnesses. *Twitty* rested on the idea that the prior decisions of this court had already interpreted Section 14-305 to require a judgment. *Id.* at 613-14; *see also Langley*, 515 A.2d at 734 (interpreting Section 14-305 to require "a judgment of conviction premised on a sentence"). The interpretation of the word "conviction" in a statute depends on context, and for the reasons we have explained we reach a different conclusion as to the meaning of "conviction" for purposes of firearm registration under Section 7-2502.03(a)(2).

In sum, although PDS cites a number of cases adopting a narrow construction of the word "conviction" in statutes depriving people of important civil rights and privileges, PDS has cited no case, and we have located no case, applying that approach to dispositions of probation before judgment in the context of statutes regulating the possession of weapons. The Supreme Court's decision in *Dickerson* takes precisely the opposite approach. 460 U.S. at 111-14. Acknowledging the ambiguity of the term "convicted" in isolation, *id.* at 112 n.6, the Supreme Court concluded that "for purposes of the federal gun control laws, we equate a plea of guilty and its notation by the state court, followed by a sentence of probation, with being convicted within the language of" Section 922, *id.* at 114 (internal quotation

marks omitted). We reach the same conclusion in the context of Section 7-2502.03(a)(2).

PDS raises three additional arguments, but those arguments do not alter our conclusion. First, PDS argues that if the word "convicted" in Section 7-2502.03 includes sentences of probation without judgment, then first-time drug offenders sentenced to probation without judgment under D.C. Code § 48-904.01(e) would be disqualified from registering a firearm. D.C. Code § 7-2502.03(a)(4). We express no view on that question in the context of a defendant who has been sentenced to probation without judgment under Section 48-904.01(e) and is still serving the period of probation. We do note, however, that Section 48-904.01(e) specifically provides that if the trial court subsequently discharges the defendant from probation and dismisses the proceeding, the "discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." D.C. Code § 48-904.01(e)(1). We see no reason to think that the D.C. Council's decision to enact a specific carve-out for first-time drug offenders who received a sentence of probation without judgment and have been discharged from probation implies that the D.C. Council intended to permit firearm possession by offenders who were sentenced to probation without judgment for other

disqualifying offenses listed in Section 7-2502.03(a), such as prior weapons offenses.

Second, PDS suggests that FCRA may pose constitutional problems under the Second Amendment right to keep and bear arms. Neither Mr. Porter nor PDS has raised a Second Amendment challenge to FCRA, and we therefore express no view on that topic. Nor do we view the doctrine of constitutional avoidance as relevant to our disposition of this case. Under that doctrine, courts construe "ambiguous statutory language . . . to avoid serious constitutional doubts." *J.P. v. District of Columbia*, 189 A.3d 212, 221 (D.C. 2018) (internal quotation marks omitted). Whatever constitutional concerns FCRA may raise under the Second Amendment, we do not believe that those concerns depend on the question we are deciding: whether a sentence of probation before judgment is a disqualifying "conviction" for purposes of Section 7-2502.03(a)(2). Rather, "the constitutional concern[s] [PDS] raises would persist even if we were to agree with [PDS's position in this case]. Under the circumstances, we do not view the doctrine of constitutional avoidance as supporting [PDS's] argument." *J.P.*, 189 A.3d at 222; *see also Ileto v. Glock, Inc.*, 565 F.3d 1126, 1143 n.12 (9th Cir. 2009) (point of constitutional-avoidance doctrine is to adopt interpretation that "avoids any constitutional problem," not to leave alternative that "still raises the identical issue in a slightly different form"). In other

words, whatever limits the Second Amendment may or may not impose on the ability of jurisdictions to preclude firearm registration based on an applicant's prior illegal possession of a firearm, we see no reason to believe that the constitutional analysis would turn on a distinction between applicants who receive a final judgment of conviction for such conduct and those (like Mr. Porter) who plead guilty to such conduct, waive any ability to challenge that judgment of guilt, are sentenced to probation, and then are discharged from probation for reasons other than innocence.

Third, PDS argues that statutes imposing civil disabilities should be strictly construed. This court does not appear to have adopted that principle, and we express no view as to whether the court should do so in an appropriate case. Assuming that we were to adopt that principle, the principle would logically seem to have no greater force than the rule of lenity that potentially applies in criminal cases. *See, e.g.*, *Fleming v. United States*, 224 A.3d 213, 228 (D.C. 2020) (en banc) ("The rule of lenity, however, is a secondary canon of construction, and is to be invoked only where the statutory language, structure, purpose, and history leave the intent of the legislature in genuine doubt.") (internal quotation marks omitted). For the reasons we have explained, we are not left in genuine doubt as to the proper interpretation of the word "convicted" in Section 7-2502.03(a)(2). Applying a doctrine of strict

construction of statutes that impose civil disabilities therefore would not tip the balance in this case.

In sum, we hold that a sentence of probation before judgment under Md. Code Ann., Crim. Proc. § 6-220(b) is a conviction for purposes of firearm registration under Section 7-2502.03(a)(2).

### 3. Discharge and expungement

Our holding that Mr. Porter's 2015 sentence of probation before judgment constituted a conviction does not fully resolve this case, however. As previously noted, we assume for current purposes that the Maryland trial court subsequently discharged Mr. Porter from the period of probation imposed in 2015. Moreover, in 2020 Maryland expunged the records of Mr. Porter's Maryland offense. We hold that neither of these subsequent events alters the conclusion that Mr. Porter has a disqualifying conviction for purposes of Section 7-2502.03(a)(2).

In *Dickerson*, the Supreme Court addressed whether discharge of probation and expungement meant that a defendant no longer had a disqualifying conviction for purposes of the then-current version of 18 U.S.C. § 922. 460 U.S. at 114-22. The Court concluded that the sentence of probation without judgment remained a

conviction for purposes of Section 922 despite the discharge of probation and expungement. *Id.* In reaching that conclusion, the Court explained that the subsequent developments did "not alter the historical fact of the conviction," did "not alter the legality of the previous conviction[,] and [did] not signify that the defendant was innocent of the crime to which he pleaded guilty." *Id.* at 115. Rather, the subsequent developments meant only "that the State has provided a means for the trial court not to accord a conviction certain continuing effects under state law." *Id.*

The Court in *Dickerson* also gave weight to Congress's use of "*has been* convicted" in Section 922. 460 U.S. at 116 (internal quotation marks omitted). As the Court explained, the use of "has been" reflected that "Congress carefully distinguished between present status and a past event." *Id.*

The Court also explained that "the purpose of the statute would be frustrated by a ruling that gave effect to state expunctions; a state expunction typically does not focus upon the question with which [the provisions at issue are] concerned, namely, whether the convicted person is fit to engage in the firearms business or to possess a firearm." *Dickerson*, 460 U.S. at 119.

Although the Supreme Court in *Dickerson* also relied on other considerations, 460 U.S. at 114-22, we view the foregoing considerations as equally applicable to Section 7-2502.03(a)(2) and as ample to support a conclusion that Mr. Porter's 2015 sentence of probation before judgment constitutes a disqualifying conviction despite the subsequent presumed discharge of probation and expungement. Discharge of probation under Section 6-220(b) reflects nothing more than successful completion of probation. Md. Code Ann., Crim. Proc. § 6-220(i)(1). Successful completion of probation, however, is not generally treated under D.C. law as a basis upon which a conviction is disregarded for purposes of Section 7-2502.03(a)(2). We thus do not view the presumed discharge of Mr. Porter's probation as undermining the conclusion that Mr. Porter has been convicted of a disqualifying weapons offense: transporting a handgun on a highway in violation of Maryland law.

Expungement under Maryland law is generally available to persons sentenced to probation before judgment. Md. Code Ann., Crim. Proc. § 10-105(a)(3). When deciding whether to grant expungement to a defendant who had been sentenced to probation before judgment, the trial court does not appear to be required to make any finding other than that the defendant does not have subsequent disqualifying convictions or charges. *Id.* § 105(e)(2), (4). The decision of the Maryland court to

grant Mr. Porter expungement in our view also does not undermine the conclusion that Mr. Porter has been convicted of a disqualifying weapons offense.

We note that Congress subsequently amended the federal firearm statute (a) to make the question whether an offense is a conviction under 18 U.S.C. § 922 a matter of state law, 18 U.S.C. § 921(a)(20); and (b) to provide that expunged convictions generally are not disqualifying, *id.* We do not view those amendments as undermining the relevance of *Dickerson* to the present case. We have already held that under FCRA whether Mr. Porter's sentence of probation before judgment is a disqualifying conviction is a matter of District of Columbia law, not the law of Maryland. Although Congress later amended the federal firearm statute to incorporate state law, Congress's decision to take that route does not alter our conclusion that whether a defendant has a conviction for purposes of FCRA is a matter of District of Columbia law.

Moreover, Congress's later decision to amend the federal firearm statute to exclude expunged offenses as disqualifying convictions casts no doubt on the Supreme Court's decision in *Dickerson* that, before the amendment, offenses expunged on grounds other than innocence were disqualifying under Section 922. 460 U.S. at 114-21. *See generally United States v. Pennon*, 816 F.2d 527, 529 (10th

Cir. 1987) (subsequent amendment changed federal firearm law going forward but did not indicate that Congress disagreed with Supreme Court's interpretation of prior law).

The amendments to Section 922 at issue were enacted in 1986 as part of the Firearms Owners' Protection Act ("FOPA"), Pub. L. No. 99-308, § 101, 100 Stat. 449, 449-50 (1986). The Congress that enacted FOPA did so to "correct existing firearms statutes." *Id.* at § 1(b), 100 Stat. at 449; *see also Van Der Hule v. Holder*, 759 F.3d 1043, 1046 (9th Cir. 2014) (FOPA reflected Congress's "intent to roll back certain restrictions on the rights of citizens to possess firearms . . . ."). There has been disagreement about whether Congress's decisions in FOPA were sound or unsound as a matter of policy. *See, e.g.*, David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 585 (1986/1987) (FOPA "was predictably lauded as necessary to restore fundamental fairness and clarity to our Nation's firearms laws and damned as an almost monstrous idea and a national disgrace.") (footnotes and internal quotation marks omitted); Violent and Drug Trafficking Crimes: the *Bailey* Decision's Effect on Prosecutions under 924(c): Hearing before the Committee on the Judiciary, United States Senate, 104th Cong. 8-9 (1996) (Statement of Kevin Di Gregory, Deputy Assistant Attorney General, Criminal Division, United States Department of Justice)

(arguing that FOPA's amendment of 18 U.S.C. § 921(a)(20) "has had adverse effects from the standpoint of public safety").

Whether the approach to prior convictions reflected in FOPA is or is not good policy is not our concern. The relevant point is that, unlike Congress, the D.C. Council has not changed its policy course by explicitly providing that convictions that have been expunged for reasons unrelated to innocence shall not be considered convictions for purposes of firearm registration. (This case does not involve an expungement based on innocence, and we express no view about how such expungements should be considered under Section 7-2502.03(a)(2).)

In sum, we hold that Mr. Porter "has . . . been convicted" of a disqualifying offense for purposes of Section 7-2502.03(a)(2) based on Mr. Porter's 2015 sentence of probation before judgment, and the subsequent presumed discharge of probation and expungement do not alter that conclusion.

### 4. Response to the dissenting opinion

The dissenting opinion provides four principal reasons for reaching a contrary conclusion. We are not persuaded.

### a. Issue preservation

The dissenting opinion first reasons that this court should not decide whether Mr. Porter's 2015 sentence of probation before judgment constitutes a conviction for purposes of Section 7-2502.03(a)(2), because that issue is not properly before the court. *Infra* at 40, 42-52. We disagree.

It is true that MPD's principal focus in this court was on the broader theory that Mr. Porter's 2009 guilty plea by itself constitutes a conviction for purposes of Section 7-2502.03(a)(2). In a number of places, however, MPD relies not solely on the guilty plea but also on the subsequent imposition of probation before judgment. For example, in its supplemental brief, MPD states that the issue in the case "is whether MPD reasonably read 'convicted' to include guilty pleas *followed by probation before judgment.*" (Emphasis added.) Moreover, MPD (1) argues that probation before judgment "is a form of punishment and waives any right to appeal"; (2) relies on a case treating probation before judgment in Maryland as a conviction for federal immigration purposes; and (3) distinguishes cases cited by PDS as resting on concerns that do not apply in the "probation-before-judgment context."

It is worth emphasizing the third point just listed. Using strong language, the dissenting opinion describes it as "unfair and inimical to our commitment to give

parties notice and an opportunity to be heard" for the opinion for the court to distinguish some of the cases PDS relies upon on the ground that those cases involve only guilty pleas rather than guilty pleas followed by probation before judgment. *Infra* at 52. MPD, however, distinguishes PDS's cases on that precise basis. We see no unfairness in agreeing with a point specifically made in the brief of a party.

In light of the foregoing, it should not be surprising that PDS explicitly acknowledges that the issue before the court includes whether probation without judgment is a conviction, stating at the outset of its brief that this appeal "requires this Court to decide whether the term 'convicted' in D.C. Code § 7-2502.03 encompasses probation before judgment."

The dissenting opinion states that MPD "concede[d]" or made "representations" at oral argument that the 2015 order granting probation before judgment was not a sentence or a conviction. *Infra* at 41, 49, 63-64. We do not, however, view the quoted statements as a clear concession or representation abandoning the argument MPD makes in its briefs. That is particularly true given another comment by counsel for MPD at oral argument that probation before judgment entails "a sentence, a period of probation, a punishment."

Finally, the dissenting opinion expresses the view that MPD did not rely on the sentence of probation before judgment as the disqualifying conviction either (1) in MPD's denials of Mr. Porter's applications or (2) before OAH. *Infra* at 42-44. We can agree that MPD's stated reasoning in denying Mr. Porter's applications was opaque at best. MPD did, however, raise before OAH the idea that probation before judgment is a conviction. More fundamentally, neither Mr. Porter nor PDS has contended that MPD failed to properly preserve the argument that the sentence of probation before judgment was a conviction for purposes of Section 7-2502.03(a)(2). We do not usually consider sua sponte whether an issue briefed in this court was properly preserved in earlier proceedings. *See, e.g., Sims v. United States*, 213 A.3d 1260, 1267 n.11 (D.C. 2019) (by failing to argue that defendant's argument was not properly preserved at trial, United States "waived the waiver") (internal quotation marks omitted); *see generally District of Columbia v. Bryant*, 307 A.3d 443, 453 (D.C. 2024) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.") (internal quotation marks omitted). We see no special justification in this case for sua sponte raising a series of issue-preservation claims that neither Mr. Porter nor PDS has raised, much less for doing so without providing MPD with notice of those claims and an

opportunity to address them. To the contrary, the issue we revolve in this case is a pure question of law, briefed by the parties in this court, as to which we owe no deference to OAH and need not defer to MPD. *See supra* at 7.

### b. Probation before judgment as a sentence

To the extent that the dissenting opinion suggests that Mr. Porter did not receive a sentence when the trial court placed Mr. Porter on probation before judgment in 2015, *infra* at 63-67, we disagree.

As we have previously noted, a Maryland court has held that probation before judgment is a sentence that can be challenged as illegal under a provision authorizing such challenges. *Carter*, 996 A.2d at 957; *cf. Eaglin v. District of Columbia*, 123 A.3d 953, 955 n.7 (D.C. 2015) (Maryland courts "may sentence people . . . to probation without judgment") (internal quotation marks omitted).

The decision in *Carter* rested on the following reasoning: (1) Maryland decisions refer to probation before judgment as a sentence, 996 A.2d at 957 (citing cases); (2) one of the definitions of "sentence" is "punishment imposed on a criminal wrongdoer," *id.* (internal quotation marks omitted); and (3) probation generally and probation before judgment specifically constitute criminal punishment, *id.* We find

the reasoning in *Carter* persuasive and consistent with the law of the District of Columbia. *See, e.g.*, *Gotay v. United States*, 805 A.2d 944, 948 (D.C. 2002) (referring to trial court "sentencing a first-time drug offender to probation without judgment"); *McDonald v. United States*, 415 A.2d 538, 540-43 (D.C. 1980) (order suspending imposition of sentence and placing defendant on probation was "sentencing" for purpose of sentencing-enhancement provision); *see generally, e.g.*, *United States v. Knights*, 534 U.S. 112, 119 (2001) ("Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. Probation is one point on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.") (ellipsis, citations, and internal quotation marks omitted).

### c. Policy considerations

The dissenting opinion takes the view that the D.C. Council reasonably could have decided to temporarily preclude firearm registration by persons who are merely under indictment for disqualifying offenses while declining to permanently preclude firearm registration by persons who pleaded guilty to a disqualifying offense, agreed not to contest their guilt, were sentenced to probation, and then were discharged from

probation for reasons other than innocence. *Infra* at 74-76. We have already attempted to explain why we disagree, but to summarize: (1) when FCRA was enacted in 1976, neither the Supreme Court nor this court had recognized an individual Second Amendment right to keep and bear arms; (2) there thus is no basis to infer that the D.C. Council was legislating narrowly to avoid imposing substantial civil disabilities; (3) to the contrary, FCRA's legislative history indicates that FCRA was intended to broadly limit firearm possession to protect the public safety; (4) this court's cases have recognized FCRA's broad purpose; (5) FCRA's decision to preclude firearm registration by persons who were merely indicted for disqualifying offenses indicates that the D.C. Council's public-safety concerns were not limited to persons who had been "convicted" in the narrowest sense of that term; (6) persons who plead guilty to a disqualifying offense, agree not to contest their guilt, and are sentenced to probation have been finally determined to have engaged in conduct that the D.C. Council determined made it inappropriate to permit them to register a firearm; and (7) the mere fact that the jurisdiction in which the offense occurred chose to make probation before (or without) judgment available, or to later discharge a defendant from probation for reasons other than innocence, provides no particular assurance that in fact the defendant's possession of a firearm would not pose a risk to public safety.

### d. Binary choice

The dissenting opinion takes the position that there are only two options for the interpretation of the term "convicted" in FCRA: the term must mean either "a finding of guilt" or a "judgment of conviction." *Infra* at 70-71. As the dissenting opinion goes on to state, "[m]uch as the majority may like to will it into being, there is no third way to resolve the ambiguous text of the statute." *Infra* at 72. Relatedly, the dissenting opinion describes the opinion for the court as adopting a "novel conception" of the term "convicted." *Infra* at 73. To the contrary, the interpretation of the term "convicted" we adopt is neither novel nor some nonexistent "third way" that we have tried to "will . . . into being." *Infra* at 72. Rather, as we have emphasized, the interpretation of the term "convicted" we adopt is precisely the interpretation that the Supreme Court of the United States gave in *Dickerson*, 460 U.S. 103, to the term "convicted" in a federal firearm statute quite similar to FCRA.

In sum, for the foregoing reasons we reverse OAH's order and uphold MPD's decision to deny Mr. Porter's application for a firearm registration certificate.

*So ordered.*

THOMPSON, *Senior Judge*, concurring: I fully join Judge McLeese's opinion for the court, which holds that the Maryland court's 2015 imposition of probation before judgment constitutes a conviction for purposes of D.C. Code § 7-2502.03(a)(2). However, the opinion for the court does not decide whether Mr. Porter could be viewed as having been convicted for purposes of Section 7-2502.03(a)(2) based on his original 2010 conviction that was "stricken" in 2015. I would uphold MPD's determination that the 2010 conviction, which involved both a finding of guilt and a sentence of suspended incarceration and supervised probation, suffices to establish that Mr. Porter was disqualified from registering a firearm pursuant to D.C. Code § 7-2502.03(a)(2). I believe MPD's interpretation follows from the plain language of Section 7-2502.03(a)(2), in particular its reference to a person who "has not been convicted."

The statutory phrase "has not been convicted" uses the present-perfect tense "has . . . been." "[T]he plain and ordinary usage of 'has been' is to refer to events that are ongoing *or* that were completed in the past." *Holmes v. Godinez*, 991 F.3d 775, 781 (7th Cir. 2021) (citing The Chicago Manual of Style ¶ 5.132 (17th ed. 2017)); *see also Dobrova v. Holder*, 607 F.3d 297, 301-02 (2d Cir. 2010) ("Congress's use of the present perfect tense—'has . . . been admitted'--is significant here. The present perfect tense 'refers to (1) a time in the indefinite

past . . ., or (2) a past action that comes up to and touches the present.' *Chicago Manual of Style* ¶ 5.119 (15th ed. 2003). Use of this tense evinces Congress's intent to include *any* previous admission for lawful permanent residence within the ambit of Section 212(h) . . . . [Thus, Section 212(h) applies not only] to aliens who were and still are admitted as LPRs [legal permanent residents], but also to those who were at some earlier time admitted as LPRs but, as in the instant case, have had their LPR status terminated[.]"); *The Chicago Manual of Style* ¶ 5.136 (18th ed. 2024).

I would recognize that by using the present-perfect tense, the Council of the District of Columbia signaled that the completed historical fact of Mr. Porter's 2010 conviction of a weapons offense is disqualifying under Section 7-2502.03(a)(2), notwithstanding that the Maryland court subsequently struck the conviction (on a ground other than that the conviction was illegal or that Mr. Porter was innocent) and imposed probation before judgment.

EASTERLY, *Associate Judge*, dissenting: The parties to this appeal will no doubt be surprised by the majority's opinion, which hands a reversal to MPD based on an argument that it never raised. MPD made a variety of arguments as to why Mr. Porter is ineligible to register a firearm under the District of Columbia's Firearms Control Regulations Act of 1975 ("FCRA") before it settled on the one it

pursues before this court: Mr. Porter's 2009 guilty plea alone is a "conviction" that disqualifies him from receiving a registration certificate under D.C. Code § 7-2502.03(a)(2). But at no point has MPD advanced the majority's line of reasoning that Mr. Porter's final disposition of probation before judgment in 2015 constituted a disqualifying "conviction" under FCRA. *Supra* at 8 (announcing this as the majority opinion's holding); *see also id.* at 25. We have said time and again that we are a court of review, not first view. But the majority opinion makes an exception to that rule in this case, independently concluding—mistakenly—that a final disposition of probation before judgment should be treated like a judgment of a conviction, thereby entirely disregarding the diversionary purpose of such a disposition.

Whether under MPD's reasoning looking to Mr. Porter's 2009 guilty plea or under the majority's reasoning looking to the final disposition of his case in 2015, I disagree that we should hold that Mr. Porter has a disqualifying "conviction" for the purposes of FCRA. The term "conviction" under D.C. Code § 7-2502.03(a)(2) is inherently ambiguous. As the parties acknowledge, in the legal lexicon the term can have one of two meanings: it can refer either to a finding of guilt or to a judgment of conviction. Mr. Porter had the former: he pleaded guilty in 2009 to knowingly transporting a handgun on a roadway, in violation of Maryland Code Ann., Crim.

Law § 4-203(a)(1)(ii). But he did not have the latter; rather, he had a diversionary disposition—probation before judgment—that even MPD concedes left him without a sentence or a judgment in his criminal case.

A close analysis of the text of FCRA, its stated purpose, and its legislative history do not resolve which definition of convicted we should employ and thus whether a person in Mr. Porter's shoes should be deemed "convicted" within the meaning of the statute. When these interpretive tools fail us, the doctrine of constitutional avoidance "counsel[s] that ambiguous statutory language be construed to avoid serious constitutional doubts." *Mack v. United States*, 6 A.3d 1224, 1233 (D.C. 2010) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009)). Both MPD's argument that a guilty plea constitutes a conviction within the meaning of FCRA and the majority's distinct and novel holding that a disposition of probation before judgment constitutes such a conviction raise just such serious constitutional doubts. Applying FCRA to disqualify an individual like Mr. Porter, who has no judgment of conviction—indeed, who was given the final disposition of probation before judgment precisely to ensure that he would not face the collateral consequences arising from a criminal conviction—would raise, at a minimum, serious doubts about the statute's constitutionality under the Second Amendment,

which protects an individual "right . . . to keep and bear arms." U.S. Const. amend. II; *District of Columbia v. Heller*, 554 U.S. 570, 595, 602, 626 (2008).

The majority opinion, however, ignores our contemporary understanding of the Second Amendment, instead focusing on the fact that the Council in 1976 (before *Heller* was decided) would not have perceived FCRA as limiting an individual's civil liberties. The majority further declares that the doctrine of constitutional avoidance has no "relevance" in this case because any "constitutional concern[s] . . . would persist even if we were to agree with" Mr. Porter. *Supra* at 23 (quoting *J.P. v. District of Columbia*, 189 A.3d 212, 222 (D.C. 2018)). But I cannot agree that interpreting FCRA to exempt individuals *without* a judgment of conviction would obviously raise the same constitutional concerns as interpreting the statute to include such individuals.

I.  **MPD Has Never Argued that Mr. Porter's 2015 Probation Before Judgment Disposition Constitutes a Disqualifying Conviction Under FCRA.**

As the majority opinion notes, MPD twice denied Mr. Porter's application to register a firearm. *See supra* at 2-3. But the majority opinion provides no detail about MPD's reasoning for these denials, which, though shifting, has never included

as a foundation the determination that Mr. Porter's 2015 probation before judgment disposition constitutes a disqualifying conviction under FCRA.

MPD did not even cite FCRA in its letter denying Mr. Porter's first application to register a firearm. Instead, after observing incorrectly that Mr. Porter had been "found guilty of Transport[ing] [a] Handgun on [a] Roadway on March 26, 2010, in the Maryland [sic],"[1] it denied his application based on a criminal statute, D.C Code §§ 22-4503(a)(1) and (2), which the letter described as "prohibit[ing] the possession of any firearm to a person who has been convicted for a weapons offense."[2] In a decision upholding this denial, the director of MPD's Records Division did look to FCRA, but indicated that Mr. Porter's 2009 guilty plea and 2010 sentence of three years' probation (which the director acknowledged had been stricken in 2015) constituted the disqualifying conviction under D.C. Code § 7-2502.03(a)(2).

---

[1] In fact, Mr. Porter entered a guilty plea on November 17, 2009, and was sentenced on March 26, 2010, to a three-year probationary term.

[2] The text of this statute is more nuanced, making it a crime to possess a gun if a person "has been convicted . . . of a crime punishable by imprisonment for a term exceeding one year," or of illegally selling weapons. D.C Code §§ 22-4503(a)(1), (2).

When Mr. Porter reapplied, MPD's new denial letter recited the text of D.C. Code § 7-2502.03(a)(2), referenced Mr. Porter's arrest in 2009, and stated without further elaboration that "[d]ue to this you are ineligible to possess and register a firearm in the District of Columbia." When Mr. Porter sought review before the Office of Administrative Hearings ("OAH"), MPD moved for summary adjudication, at which point it shifted its focus back to Mr. Porter's 2009 guilty plea.[3] Specifically, MPD argued that Mr. Porter's guilty plea constituted a "conviction" under D.C. Code § 7-2502.03(a)(2), "regardless of how Maryland law may treat his guilty plea in the future."[4]

---

[3] Although the Maryland court's 2015 order granting Mr. Porter's request for probation before judgment purported to strike his 2009 guilty plea as well as his 2010 sentence, I agree with the majority opinion that Mr. Porter's guilty plea survived the court's order to serve as a basis for the probation for judgment disposition. *See* Md. Code Ann., Crim. Proc. § 6-220(b); *supra* at 11-12.

[4] The majority opinion states that MPD "*raise[d] . . . the idea* that probation before judgment is a conviction" before OAH. *Supra* at 33 (emphasis added). Generally, we require parties to make developed arguments, *see infra*, but, in any event, in its briefing to OAH, MPD's argument was that the guilty plea that *preceded* the probation before judgment disposition constituted the qualifying conviction. MPD asserted that "Petitioner's guilty plea is sufficient evidence that Petitioner has been convicted of a weapons offense under D.C. Code § 7-2502.03(a)(2)"; "Petitioner's argument that his guilty plea was stricken and that he was discharged from probation lacks merit"; and "here, Petitioner's guilty plea stands as sufficient

In this court, MPD maintained its focus on the 2009 guilty plea as the basis for arguing that Mr. Porter had a disqualifying "conviction." In the Summary of Argument section of its initial brief, MPD explained that it had "reasonably applie[d] a uniform definition of 'convicted' that focuses on the factual establishment of guilt, rather than on whether the sentencing court issued a formal judgment"; that this "uniform definition . . . based on a finding of guilt is far more sensible and administrable than the alternatives"; and that "[b]y disqualifying individuals 'convicted' of certain offenses from owning firearms, the Council [when it enacted FCRA in 1976[5]] was concerned with the factual establishment of guilt." MPD Br. 13-14. The body of the MPD's initial brief reflected this singular focus as well. *See, e.g., id.* at 16 ("MPD reasonably considers an individual who pleads guilty to a disqualifying offense to have 'been convicted of' that offense for FCRA purposes. This interpretation is a sensible reading of the word 'convicted,' which is frequently understood to mean a finding of guilt . . . regardless of what sentence (if any) is later

---

evidence that he has been convicted of a weapons offense under D.C. Code § 7-2502.03(a)(2)." With respect to the ultimate disposition of probation before judgment, MPD's only point was that this did not *alter* the significance of the guilty plea.

[5] *See* Firearms Control Regulations Act of 1975, D.C. Law 1-85, § 203, 23 D.C. Reg. 2464 (1976).

imposed.”); *id*. at 17 (arguing “that a ‘conviction’ is separate from the sentence or judgment that follows”); *id*. at 18 (“Porter was ‘convicted’ as soon as he pleaded guilty”); *id*. (“MPD interprets the FCRA to turn on the adjudication of guilt”).  And in its supplemental brief, MPD continued to argue that “‘convicted’ . . . means the factual establishment of guilt”; “[a]ll the traditional tools of statutory interpretation indicate that ‘convicted’ . . . means the factual establishment of guilt”; “[f]ocusing on the factual establishment of guilt aligns with the legislative purpose of” FCRA; and “common-law sources” and case law from other courts “strongly endorse MPD’s definition of ‘convicted’ as meaning the establishment of guilt.”  MPD Supp’l Br. 2-5.

Seeking a foundation for its analysis, the majority opinion first highlights two lines of MPD’s 20-page supplemental brief where the agency refers in passing to a “guilty plea followed by a disposition of probation before judgment” and another where it states that “[b]ecause probation before judgment is a form of punishment and waives any right to appeal, a defendant’s finding of guilt is final.”  *Supra* at 31 (citing MPD Supp’l Br. at 1, 2, 7).  But these lines are taken out of context and unaccompanied by any developed argument that a final disposition of probation before judgment constitutes a conviction for the purposes of D.C. Code § 7-2502.03(a)(2).  *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008)

("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). At most, MPD's supplemental brief suggests that Mr. Porter's guilty plea did not cease to constitute a "conviction" under FCRA by virtue of his subsequent probation before judgment disposition. For example, MPD asserts that "[a]ll the traditional tools of statutory interpretation indicate that 'convicted' . . . means the factual establishment of guilt, *such as a guilty plea* followed by the entry of probation before judgment," MPD Supp'l Br. at 2 (emphasis added). Similarly, MPD's observation, to which the majority opinion cites, that "[b]ecause probation before judgment is a form of punishment and waives any right to appeal, a defendant's finding of guilt is final" is only made in support of its conclusion that "[t]here is therefore *no risk that the guilty plea will be withdrawn*." *Id*. at 7 (emphasis added). Nowhere does MPD argue that Mr. Porter's 2015 probation before judgment disposition is itself a qualifying "conviction."

The majority opinion next states that MPD's initial brief "relies on a case treating probation before judgment in Maryland as a conviction for federal immigration purposes." *Supra* at 31. But the majority fails to acknowledge that

MPD cites this case, *Yanez-Popp v. U.S. Immigr. & Naturalization Serv.*, 998 F.2d 231, 234 (4th Cir. 1993), to demonstrate that its position—that a *guilty plea* creates a conviction—had been "held reasonable" in a federal court's interpretation of a federal immigration statute. MPD Br. at 29. (This is made explicitly clear by the section header under which the *Yanez-Popp* discussion falls: "The reasonableness of MPD's interpretation is reinforced by the fact that the federal government treats *a guilty plea* like Porter's as a conviction." *Id.* (emphasis added)).

Finally, turning back to MPD's supplemental brief, the majority opinion "emphasiz[es]" that MPD "distinguishes cases cited by [Public Defender Service for the District of Columbia ("PDS"), amicus curiae for Mr. Porter,] as resting on concerns that do not apply in the 'probation-before-judgment context.'" *Supra* at 31. But again, the agency draws those distinctions only to clarify that, in the probation before judgment context, the "finding of guilt is final"—not to shift its emphasis away from its argument that Mr. Porter's guilty plea constitutes a qualifying conviction under FCRA.[6]

---

[6] The majority opinion also tries to find a foothold for its analysis in PDS's brief, pointing to the fact that PDS "stat[es] at the outset of its brief [as amicus curiae

The majority opinion's decision to depart from the briefing and award victory to MPD on a ground that it never argued is all the more striking in light of MPD's concession at oral argument that the events of 2015 were largely unimportant to its definition of "conviction."  When asked whether the court should focus on the 2015 disposition of probation before judgment (and perhaps hold that Mr. Porter, who initially received a sentence of probation in 2010, was "convicted" under FCRA only until that ultimate 2015 disposition), counsel for MPD responded that the probation before judgment disposition in 2015 was unimportant because it left Mr. Porter's 2009 guilty plea in place.[7]

---

in support of Mr. Porter] that this appeal 'requires this Court to decide whether to term "convicted" in D.C. Code § 7-2502.03 encompasses probation before judgment.'" *Supra* at 32. But that, of course, is the overarching *question* presented to this court: does Mr. Porter, who received a disposition of probation before judgment in 2015, have a qualifying conviction under FCRA?  MPD's effort to *answer* that question was not based on Mr. Porter's probation before judgment disposition, however.  Instead MPD, as petitioner, argued that Mr. Porter had a qualifying FCRA conviction, notwithstanding his ultimate disposition of probation before judgment, because he pleaded guilty to a gun offense in 2009.

[7] Counsel for MPD told the court, "I don't think we should ignore [what happened in 2015], but I think it has a more limited impact . . . . I understand that event as striking just the judgment, the original [2010] judgment that was entered." Oral Argument at 1:36:50-1:38:10.

In short, MPD has made an array of arguments as to why Mr. Porter is ineligible to register a firearm—eventually settling on the assertion that his 2009 guilty plea constitutes a disqualifying conviction under FCRA. But MPD has never made the argument on which the majority opinion now relies to conclude that MPD should prevail in this appeal.[8] And given this procedural history, I think we should adhere to the fundamental constraints on our appellate review, namely, our general rules that (1) a "contention[] not urged at the administrative level may not form the basis for overturning the decision on review," *Sawyer Prop. Mgmt. of Md., Inc. v. D.C. Rental Hous. Comm'n*, 877 A.2d 96, 105 (D.C. 2005) (quoting *Goodman v. D.C. Rental Hous. Comm'n,* 573 A.2d 1293, 1301 (D.C.1990)); *cf. Pajic v. Foote Props., LLC*, 72 A.3d 140, 145 (D.C. 2013) (explaining that "[i]n general, this court's review on appeal is limited to those issues that were properly preserved" save "in 'exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record'" (quoting *District of Columbia v. Helen Dwight*

---

[8] I am thus perplexed by the majority opinion's assertion that "neither Mr. Porter nor PDS has contended that MPD failed to properly preserve the argument that the sentence of probation before judgment was a conviction." *Supra* at 33. I am not sure how or why they would have done so given that it is the *majority opinion*—not MPD—that is raising this argument for the first time.

*Reid Educ. Found.*, 766 A.2d 28, 33 n.3 (D.C. 2001))), and (2) any argument that an appellant fails to brief to this court on appeal is "deemed waived,"[9] *District of Columbia v. Bryant*, 307 A.3d 443, 453 (D.C. 2024) (quoting *Rose v. United States*, 629 A.2d 526, 536 (D.C. 1993)).  These rules of "self-restraint . . . [are] corollar[ies] of our adversarial system, in which appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."  *Id.* (quoting *Rose*, 629 A.2d at 536-37). And we have stressed that such "[s]elf-restraint is especially warranted when the issue is complex and the question is a close one."  *Id.* (quoting *Rose*, 629 A.2d at 536).

Here the majority opinion's embrace of an argument MPD never made has more than an abstract, institutional cost.  The majority opinion actually dismisses PDS's argument in part because "many of the cases on which [it] relies involve the question whether a guilty plea [alone] constitutes a 'conviction'" and concludes that "PDS has not demonstrated that there was a well-settled principle of common law that dispositions of [a guilty plea followed by probation before judgment] did not

---

[9] In fact, it is more proper to say the argument is forfeited.  *See Plus Props. Tr. v. Molinuevo Then*, 324 A.3d 896, 902 (D.C. 2024).

constitute convictions." *Supra* at 20. But PDS focuses on a line of guilty plea cases precisely because those cases respond directly to the argument MPD made to this court—that Mr. Porter's guilty plea alone constituted a "conviction" under FCRA. The majority opinion's attempt to fortify its conclusion that the disposition of probation before judgment constitutes a conviction under FCRA based on the failure by Mr. Porter and PDS to address this contention is thus unfair and inimical to our commitment to give parties notice and an opportunity to be heard.

## II. This Court Should Not Hold That a Disposition of Probation Before Judgment is a "Conviction" Under FCRA

### A. The Nature of Probation Before Judgment

Before this court can apply our canons of statutory construction to discern whether a disposition of probation before judgment is a disqualifying conviction under FCRA, we first must understand what this disposition actually is. Probation before judgment was created as a possible final outcome in a criminal case in response to the common law understanding that civil disability consequences flow

from a judgment of conviction. The raison d'etre of probation before judgment[10] is to give select defendants the opportunity to receive a final disposition that does *not* carry the consequences of a judgment of conviction.

Historically, upon a plea or finding of guilt, a defendant received a judgment, also known as a sentence. *See* 4 William Blackstone, Commentaries \*376 (16th ed. 1825) (following trial, "the court must pronounce that judgment, which the law hath annexed to the crime"). The "judgment" and "sentence" were one and the same; the words were used interchangeably. *See id.* at \*380 (16th ed. 1825) (describing the "sentence of death" as "the most terrible and highest judgment in the laws of England"); *Berman v. United States*, 302 U.S. 211, 212 (1937) (explaining that the "[f]inal judgment . . . means sentence[;] [t]he sentence is the judgment"). The finding of guilt alone was sometimes referred to as a "conviction." *See, e.g.*, *id.*; *Com. v. Gorham*, 99 Mass. 420 (Mass. 1868) (explaining that "[c]onviction does not mean the judgment passed upon the verdict," but, "[i]f the jury find a prisoner guilty he is then said to be convicted of the crime"); 4 William Blackstone, Commentaries

---

[10] Also known as deferred judgment; deferred adjudication; deferred-adjudication probation; deferred prosecution; probation without judgment; pretrial intervention; and adjudication withheld. Deferred Judgment, Black's Law Dictionary (12th ed. 2024).

*362 (same). But only the *judgment* of conviction carried with it the potential for other collateral consequences. *See Commonwealth v. Lockwood*, 109 Mass. 323, 325-26 (1872) (explaining that civil disabilities could attach at the point of the entry of a judgment of conviction, but not before, because "there is still in contemplation of law a possibility of [a defendant's] innocence" (quoting Blackstone at *380-81)). Jurisdictions across the country have held that civil disabilities—including

restrictions on testifying as a witness,[11] voting,[12] and holding public office[13]—

---

[11] *See, e.g.*, *People v. Whipple*, 9 Cow. 707, 708 (N.Y. Sup. Ct. 1827) (recognizing that "a conviction of treason, or felony" disqualified a witness from testifying, but to prove that a person had such a "conviction," "it is necessary to prove the record of judgment"); *Cushman v. Loker*, 2 Mass. 106, 108 (1806) (holding that "nothing short of a conviction on an indictment for *crimen falsi*, and a judgment on the conviction . . . is sufficient objection to the competency of a witness"); *Dawley v. State*, 4 Ind. 128, 129 (1853) (explaining that a witness who had received a guilty verdict, but not a sentence, was still competent to testify because "it is the judgment of the Court, and not the verdict of the jury, that renders the accused legally infamous, and, hence, incompetent as a witness"); *Turnipseed v. State*, 188 S.E. 260, 261 (Ga. Ct. App. 1936) (explaining that "[i]t was the rule of the common law that the production of the complete record, including the conviction, technically so called, and the final judgment thereon, was necessary in order to show that a witness offered was incompetent on account of infamy (quoting *Commonwealth v. Gorham*, 99 Mass. 420, 421-22 (1868))); *Langley v. United States*, 515 A.2d 729, 733 (D.C. 1986) (stressing the importance of finality before mandatory, non-criminal consequences of a conviction may be imposed, explaining that impeachment through prior convictions "can be devastating," to the point that some defendants may elect not to exercise their right to testify).

[12] *See, e.g.*, *Gallagher v. State*, 10 Tex.App. 469, 472 (Tx. Ct. App. 1881) (interpreting a statute disqualifying an individual from voting and noting that "[t]he word 'convicted' . . . has a definite signification in law . . . [and] means that a judgment of final condemnation has been pronounced against the accused"); *People v. Fabian*, 85 N.E. 672, 676 (N.Y. 1908) (holding that a statute disenfranchising voters who had been "convicted of bribery or any infamous crime" required "a conviction in the more comprehensive sense of that term—that is to say, upon a judgment based on a verdict of guilty" and noting that "[t]here are other . . . cases in which the term 'conviction' as used in statutes has been held to imply a judgment and sentence following the verdict"); *Prewitt v. Wilson*, 46 S.W.2d 90, 92 (Ky. 1932) (holding that the "verdict of a jury . . . cannot be regarded as a conviction" for the purposes of voter disenfranchisement, and that "[t]here must have been a final

judgment pronounced"); *Truchon v. Toomey*, 254 P.2d 638, 644 (Cal. Dist. Ct. App. 1953) (holding that a judgment is required before a person may be disenfranchised because of "[t]he general rule [that] where conviction results in civil penalties and disabilities [the] conviction takes the technical meaning of verdict plus judgment"); *Kitsap Cnty. Republican Cent. Comm. v. Huff*, 620 P.2d 986, 989-90 (Wash. 1980) (en banc) (recognizing that "[w]here civil penalties and disabilities are involved," the term "conviction" takes on a "technical meaning," and holding that an individual could not be denied the right to vote based on a conviction "until the trial court enters a judgment and sentence confirming the jury's verdict").

[13] *See, e.g.*, *Smith v. Commonwealth*, 113 S.E. 707, 708 (Va. 1922) (concluding in the context of removal from public office that "conviction" means a judgment, at least when the defendant pleads not guilty); *Commonwealth ex rel. McClenachan v. Reading*, 6 A.2d 776, 777-78 (Pa. 1939) (examining a provision of the state constitution disqualifying individuals from holding public office who are "convicted of an infamous crime" and holding that, until a person has "been convicted as evidence[d] by a final judgment they cannot be deprived of the right to hold . . . office[]"); *Helena Rubenstein Int'l. v. Younger*, 139 Cal.Rptr. 473, 476, 478-81 (Cal. Ct. App. 1977) (holding that the term "conviction" in statute disqualifying individuals from public office requires "rendition of judgment following the verdict" because "[i]n the context of statutes or constitutional provisions imposing civil penalties or disabilities, ['convicted' and 'conviction'] have never been construed to mean the verdict of guilt"); *Slawik v. Folsom*, 410 A.2d 512, 515 (Del. 1979) (holding that where the state constitution creates a "disability to hold public office, the word 'convicted' is to be construed as . . . consisting of a determination of guilt by plea or verdict followed by the imposition of sentence"); *Kitsap Cnty. Republican Cent. Comm.*, 620 P.2d at 990 (concluding that, under a statute disqualifying individuals from public office based on a "conviction" for certain offenses, an individual "cannot be relieved of his office . . . until the trial court enters a judgment and sentence"); *People ex rel. Grogan v. Lisinski*, 446 N.E.2d 1251, 1254 (Ill. App. Ct. 1983) (holding that, in statute governing removal from public office, "the use of the term 'conviction' contemplates more than a mere finding of guilt. . . . The trial process ends and the accused is 'convicted' when the sentence is imposed"); *Eckels v. Gist*, 743 S.W.2d 330, 331-32 (Tx. Ct. App. 1987)

cannot be imposed without a judgment of conviction.

The disposition of probation before judgment is a relatively modern invention.[14] The purpose of the disposition is to serve as an alternative to a judgment

---

(holding that "the word 'conviction'" in statute governing removal from public office "has acquired a technical meaning" and "requires a judgment"); *Jones v. Baltimore City Police Dep't*, 606 A.2d 214, 216 (Md. App. Ct. 1992) (holding that entry of probation before judgment does not constitute a "conviction" under a statute terminating law enforcement officers who have been "convicted of a felony" without a hearing because, where a statute "imposes a legal disability," courts have "defined 'conviction' in its legal and technical sense" and required a formal judgment (quoting *Myers v. State*, 496 A.2d 312, 313-14 (Md. App. Ct. 1985))).

[14] Though the codification of this kind of disposition may have been presaged by the common law development of similar off-ramps, *see* Model Penal Code: Sentencing § 6.04(1) (2024), Comment (a) (explaining that "[a]s the number of people charged with crimes has risen, courts and prosecutors have developed numerous ways of managing certain criminal cases," including "probation before judgment," "that do not result in a record of conviction"), state legislatures, for the most part, began enacting probation before judgment or similar statutes only in the latter half of the twentieth century. *See, e.g.*, Ark. Code Ann. § 16-93-303 (enacted 1975 by 1975 Ark. Acts 882-83); Colo. Rev. Stat. Ann. § 18-1.3-102 (enacted 1975, *see People v. Afentul*, 773 P.2d 1081, 1083 (Colo. 1989) (en banc)); Del. Code Ann. tit. 11 § 4218 (earlier version, Del. Code Ann. tit. 11, § 4332(4), enacted 1964 by 54 Del. Laws 1096 (1964)); Fla. Stat. § 948.01 (enacted 1941 by 1941 Fla. Laws 1080-81); Ga. Code Ann. § 42-8-60 (enacted 1968, *see State v. Wiley*, 210 S.E.2d 790, 791 (Ga. 1974)); 720 Ill. Comp. Stat. Ann. 550/10 (enacted 1971 by 1971 Ill. Laws 1575); Mass. Gen. Laws Ann. ch. 278 § 18 (enacted 1992 by 1992 Mass. Acts 1099); Minn. Stat. Ann. § 152.18, Subdivision 1 (enacted 1971 by 1971 Minn. Laws 1937-38); Nev. Rev. Stat. Ann. § 176.211 (enacted 2019 by 2019 Nev. Stat. 4388); N.J. Stat. Ann. § 2C:36A-1 (previously N.J. Stat. Ann. § 24:21-27, enacted 1970, *see State v. Humphreys*, 444 A.2d 569, 571 (N.J. 1982)); N.M. Stat. Ann. § 31-20-13

of conviction and thereby to allow a defendant to avoid the direct and collateral consequences of a criminal conviction. Such a disposition is a "privilege . . . . Typically, a judgment is deferred in exchange for the defendant's plea of guilty or nolo contendere, and an agreement to abide by certain conditions for a specified period of time," after which, if there is compliance, the charge is dismissed. 22A C.J.S. Criminal Procedure and Rights of Accused § 290. "The purpose of [giving courts this] statutory authority to withhold judgment and ultimately to dismiss a charge is to provide an opportunity for rehabilitation and to spare the defendant, particularly a first offender, the burden of a criminal record." *Id*.; *see also* American Bar Association, Standards Relating to Sentencing Alternatives and Procedures, Standards with Commentary § 2.3(c) (1968) (describing "[s]trong support . . . for the power to place a consenting defendant on probation after the determination of

---

(enacted 1993, *see State v. Herbstman*, 974 P.2d 177, 182 (N.M. Ct. App. 1998)); N.C. Gen. Stat. Ann. § 90-96 (enacted 1971 by 1971 N.C. Sess. Laws 1490-91); Okla. Stat. Ann. tit. 22, § 991c (enacted 1970, *see State v. Salathiel,* 313 P.3d 263, 265 (Okla. Ct. Crim. App. 2013)); Or. Rev. Stat. Ann. § 475.245 (enacted 1977 by 1977 Or. Laws 707); 35 Pa. Stat. and Cons. Stat. Ann. § 780-117 (enacted 1972 by 1972 Pa. Laws 257); 12 R.I. Gen. Laws Ann. § 12-18-3 (enacted 1982 by 1982 R.I. Pub. Laws 1751-52); S.D. Codified Laws §§ 23A-27-12.2, 23A-27-13 (enacted 1972, *see State v. Johnson*, 254 N.W.2d 114, 120 (S.D. 1977)); Tenn. Code Ann. § 40-35-313 (enacted 1989 by 1989 Tenn. Pub. Acts 1343-44); Va. Code Ann. § 18.2-251 (enacted 1975 by 1975 Va. Acts 56); Wyo. Stat. Ann. § 7-13-301 (enacted 1987 (preceded by Wyo. Stat. Ann. § 7-13-203, enacted 1909) *see Billis v. State*, 800 P.2d 401, 408-09 (Wyo. 1990)).

guilt but prior to the formal entry of a judgment," with the purpose "to offer the possibility . . . of avoiding the disabilities which attach to a felony conviction"); American Bar Association, Standards Relating to Probation, Standards with Commentary § 4.3 (1970) (explaining that "convicted persons are generally subjected to numerous disabilities and disqualifications which have little relation to the crime committed, the person committing it or, consequently, the protection of society," and describing deferred judgment statutes as one method of "address[ing] the problem of collateral disabilities"); Margaret Colgate Love, *Alternatives to Conviction: Deferred Adjudication as a Way of Avoiding Collateral Consequences*, 22 Fed. Sent'g Rep. 6, 6 (2009) (explaining that deferred adjudication is one of the methods state court judges have available to "avoid or neutralize the effect of a criminal record"); Alexandra Natapoff, *Misdemeanor Decriminalization*, 68 Vand. L. Rev. 1055, 1087-88 (2015) (describing probation before judgment as a diversionary mechanism); Model Penal Code: Sentencing § 6.04(1)-(2) (2024) ("The purposes of deferred adjudication"—defined as "any practice that conditionally disposes of a criminal case prior to the entry of a judgment of conviction"—include "to facilitate offenders' rehabilitation and reintegration into the law-abiding community . . . . Deferred adjudication should be offered to hold the individual accountable for criminal conduct through a formal court process, but

justice and public safety do not require that the individual be subjected to the stigma and collateral consequences associated with formal conviction.").  Many states authorize such dispositions.[15]

The District of Columbia enacted its own probation before judgment statute for first-time drug offenders in 1981.  *See* District of Columbia Uniform Controlled Substances Act of 1981, D.C. Law 4-29, § 401(d), 28 D.C. Reg. 3081 (1981) (codified at D.C. Code § 48-904.01(e)).  In doing so, the Council understood that it was creating exactly this kind of off-ramp from a judgment of conviction and its attendant collateral consequences; it explicitly stated that its aim was to

> offer[] first offenders, at the court's option, the chance to 'wipe the slate clean.'  For example, in response to a job application question as to whether or not the person has ever been arrested or convicted, such a person could lawfully answer 'no' and not be obligated to supply any clarifying information concerning this particular offense.

District of Columbia Uniform Controlled Substances Act of 1981, Report on Bill No. 4-123 before the Committee on the Judiciary, Council of the District of Columbia at 31 (April 8, 1981); *see also id.* at 6-7 (statute to "provide the means for giving certain first offenders the opportunity to make a new start without the

---

[15] *See supra* note 14.

handicap of a criminal record"). This objective is manifest in the text of the statute, which provides that the "discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." D.C. Code § 48-904.01(e)(1).[16]

Courts across the country have recognized this same purpose in their states' analogous statutes. *See State v. Williams*, 778 S.E.2d 579, 586 (W. Va. 2015) ("The purpose of statutory authority to withhold judgment and ultimately to dismiss a charge is to provide an opportunity for rehabilitation and to spare the defendant, particularly a first offender, the burden of a criminal record." (quoting 22A C.J.S. Criminal Law § 558 (2015))); *Ryan v. State*, 791 A.2d 742, 744 (Del. 2002) ("The successful completion of probation before judgment . . . blot[s] out the existence of guilt." (internal quotation marks omitted)); *Davis v. State*, 968 S.W.2d 368, 370 (Tx.

---

[16] The majority opinion, while explicitly not deciding the implications of its holding for the District's probation before judgment statute, calls attention to the "shall not be deemed a conviction for purposes of disqualifications or disabilities" language in the District's statute. *Supra* at 22. In doing so, it seems to suggest that the District's statute is somehow distinct from the Maryland statute and may therefore not be impacted by this decision. But the language of the Maryland statute is nearly identical. Md. Code Ann., Crim. Proc. § 6-220(i)(3) ("Discharge of a defendant under this section shall be without judgment of conviction and is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime.").

Crim. App. 1998) (en banc) ("A defendant reaps the main benefit of deferred adjudication if the period of community supervision is successfully completed without the judge's proceeding to adjudicate guilt. Then the proceedings are dismissed, the defendant is discharged, and the defendant 'may not be deemed [to have] a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense.'" (alteration in original) (quoting Tex. Code Crim. Proc. Ann. Art 42.12 (West 1998))); *Higdon v. State*, 715 S.E.2d 741, 743 (Ga. Ct. App. 2011) (explaining that, under Georgia's first offender status statute, "once the defendant has fulfilled the terms . . ., the defendant is discharged without adjudication of guilt . . . and is not considered to have a criminal conviction. The purpose is to allow the first offender an opportunity for rehabilitation without the stigma of a criminal conviction."); *State v. Woodbury,* 112 P.3d 835, 837 (Idaho Ct. App. 2005) ("The purpose of [Idaho's] statutory authority to withhold judgment and ultimately to dismiss the charge is to provide an opportunity for rehabilitation and to spare the defendant, particularly a first offender, the burden of a criminal record."); *People v. Sharp*, 112 Cal.App.4th 1336, 1340-41 (Cal. Ct. App. 2003) ("The purpose of the deferred entry of judgment is 'to divert from the normal criminal process persons who are formally charged with first-time possession of drugs, have not yet gone to trial, and are found to be suitable for treatment and

rehabilitation at the local level.'" (quoting *People v. Superior Ct. (On Tai Ho)* 11 Cal.3d 59, 61 (Cal. 1974) (en banc))).

Maryland is no different. Under Maryland law, probation before judgment is understood to be a diversionary mechanism that, when successfully navigated, leaves the individual without a criminal conviction:

> When a defendant pleads (or is found) guilty, in the ordinary course, he proceeds to sentencing. In fact, until he is sentenced, he is not technically "convicted" of a crime, and there is no final judgment. A defendant may seek a PBJ [probation before judgment] . . . to *avoid* such a final judgment. . . . [W]hen a defendant asks for a PBJ, he is seeking to stop the proceedings and *prevent* a final judgment—the final judgment of conviction that is entered upon sentencing.

*Schmidt v. State*, 226 A.3d 842, 847-48 (Md. Ct. Spec. App. 2020) (internal citations omitted); *see also Smith v. State*, 162 A.3d 955, 969 (Md. App. Ct. 2017) (rejecting the proposition that a probation before judgment is identical to a conviction and observing that "[a] conviction has many consequences that a sentence of probation before judgment would not, including 'possible enhanced sentencing if convicted again, possible deportation, possible loss of the right to vote, disqualification for public office, possible loss of employment[,] . . . the rejection of one's application to the country club.'" (quoting *State v. Smith*, 146 A.3d 1189, 1203 (Md. Ct. Spec. App. 2016)).

**B. The Majority Opinion's Mischaracterization of Probation Before Judgment.**

The majority opinion ignores the diversionary purpose of this type of disposition entirely. Curiously centering its analysis on Maryland law,[17] the majority opinion first asserts that "probation before judgment is a sentence and a final judgment for purposes of appellate review" in Maryland, *supra* at 10; then, dropping the limiting language of "appellate review," states that an individual with probation before judgment in Maryland "ha[s] been sentenced for their conduct," *id.* at 16; and finally concludes that this out-of-state "sentence," together with a guilty plea, constitutes a "conviction" in the District under FCRA, *id.* at 25, 30.

The majority opinion's assertion that this disposition generally constitutes a sentence under Maryland law flies in the face of the representations by counsel for MPD at oral argument that, after Mr. Porter's 2010 conviction was stricken in 2015,

---

[17] As the majority opinion holds (correctly in my view), Maryland's conception of its statute has no direct bearing on our determination whether the probation before judgment disposition is a conviction under our FCRA. *Supra* at 5-6 (rejecting OAH's conclusion that we owe full faith and credit to Maryland law on this question).

Mr. Porter *had no sentence* in Maryland.[18] But whether probation before judgment disposition is more akin to a "sentence" in the sense of a punishment, or to a conditional period of presentencing supervision, the disposition of probation *before judgment* clearly divorces any such "sentence" from a final judgment of conviction. *See supra* Dissent Part II.A. And none of the cases cited by the majority opinion support the conclusion that either Maryland or the District generally perceive the

---

[18] In addition to telling the court that "the striking order [accompanying the 2015 disposition of probation before judgment] comes at the end of the probationary period . . . striking the judgment of the court and the sentence of, in this case, three years of incarceration suspended," counsel for MPD said explicitly that "at the end of the day," a person receiving a disposition of probation before judgment has "a valid guilty plea, but no judgment and no sentence at that point."

The majority opinion seeks to muddy the waters by claiming that MPD's counsel stated that "probation before judgment entails 'a sentence, a period of probation, a punishment.'" *Supra* at 32 (quoting Oral Argument at 1:45:55-1:46:00). But this takes counsel's words out of context. As part of an answer about why the Council would have wanted someone who had pleaded guilty to be disqualified from obtaining a gun registration certificate, MPD's counsel noted that such an individual had already "admitted they committed the crime and they were imposed a sentence, or a period of probation, a punishment as a result." In other words, he was referring to the period of probation that would precede the ultimate disposition of probation before judgment—which may resemble a sentence of probationary punishment, and was in fact such a sentence in Mr. Porter's case. But he was not arguing, contrary to his earlier representation, that the ultimate disposition of probation before judgment—which struck Mr. Porter's previously-imposed probationary sentence and conviction—was itself a sentence or a judgment.

disposition of probation before judgment as a conviction or that we should do so in this case.

The majority asserts that *Jones v. Baltimore City Police Department*, 606 A.2d 214 (Md. App. Ct. 1992), and *Carter v. State*, 996 A.2d 948 (Md. Ct. Spec. App. 2010), stand for the proposition that "[u]nder Maryland law, probation before judgment is a sentence and a final judgment for purposes of appellate review," *supra* at 10, and from there concludes that this disposition is a sentence and final judgment generally, *id.* at 25, 30. But *Jones* is fundamentally at odds with the majority's conclusion. Although the court in *Jones* observed that "probation before judgment may constitute a final judgment within the meaning of a statute governing appeals," it went on to say (in a passage the majority opinion omits, *supra* at 10) that "*we have made it clear that probation before judgment is not a final judgment of conviction for most purposes.*" *Jones*, 606 A.2d at 218 (emphasis added). In keeping with this principle, *Jones* explicitly held that such a disposition was *not* a conviction under a

statute that allowed for termination of a police officer without a hearing if the officer had been convicted of a felony. *Id.*[19]

*Carter* is no more helpful than *Jones*. The defendant in *Carter*, who had been given probation before judgment, raised no challenge to this disposition. Instead he sought to appeal as an illegal sentence an order purporting to tack on an additional probationary period to the initially imposed two years he had already successfully completed. 996 A.2d at 953-54. Applying one of two possible definitions of "sentence"—"the punishment imposed on a criminal wrongdoer," *id.* at 957—the court concluded that "the initial order of probation, and the order extending the term of probation, w[ould] be treated as a sentence for the purpose of a motion to correct an illegal sentence." But the court said nothing to indicate that a probation before judgment disposition is considered a sentence or a judgment of conviction beyond this context. To the contrary, the court acknowledged that, if it were to employ the alternate definition of sentence—"[t]he judgment that a court formally

---

[19] *Jones* is not an outlier. *See, e.g., Curry v. Dep't of Pub. Safety and Corr. Servs.*, 651 A.2d 390, 391 n.1 (Md. Ct. Spec. App. 1994) ("While a probation before judgment has been considered a final judgment for purposes of a statute governing the State's right to appeal, it is not a final judgment for most purposes, unless and until the probationer violates the terms of the probation." (internal citation omitted)).

pronounces"—it would be "problematic" to conclude that probation before judgment constituted a sentence because "such a disposition results in a stay of entry of judgment."[20] *Id*.

The majority opinion goes on to say that it "find[s] the reasoning in *Carter* [concluding that probation before judgment could be a sentence in the sense of a punishment] persuasive and consistent with the law of the District of Columbia." *Supra* at 34-35. But none of the cases the majority cites support its holding that probation before judgment constitutes a sentence leading to a conviction. Both *McDonald v. United States*, 415 A.2d 538, 540-43 (D.C. 1980), and *United States v. Knights*, 534 U.S. 112, 119 (2001), involve a simple probation, *not* probation before judgment; there is no indication in either case that that judgment was deferred or stricken, or eligible to be deferred or stricken, and thus I fail to see how they are relevant to the question at hand. And although *Gotay v. United States*, 805 A.2d 944

---

[20] Maryland's statute, like the District's, authorizes certain categories of defendants to be "place[d] . . . on" (not sentenced to) probation "without entering a judgment of guilty" or while "stay[ing] the entering of judgment." D.C. Code § 48-904.01(e)(1); Md. Code Ann., Crim. Proc. §§ 6-220(b), (c)(1). And if the defendant is successful on probation, the court may "discharge the defendant from probation." Md. Code Ann., Crim. Proc. § 6-220(i)(1); *see also* D.C. Code § 48-904.01(e)(1).

(D.C. 2002), refers to a trial court "sentencing a first-time drug offender to probation without judgment," it does so in the context of holding that the trial court could not impose a fine as a condition of that probation because to do so "would, in effect, allow the court to sentence appellant as a convicted criminal *when he was not actually convicted of the offense charged.*" *Id.* at 947 (emphasis added).[21]  In short, the majority provides no support in Maryland or District law for its conclusion that a probation before judgment disposition constitutes a *conviction.*[22]

---

[21] Likewise, although this court in *Eaglin v. District of Columbia*, 123 A.3d 953, 955 n.7 (D.C. 2015), said that "Maryland courts may sentence people . . . to probation before judgment," it explicitly contrasted this initial "sentence" with the ultimate "discharge" from probation, which we explained "equates to the 'final disposition' of the case" and "is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime." *Id.* at 955 n.7.

[22]  As the majority points out, the Maryland legislature has created certain statutory exceptions to the general rule that probation before judgment does not constitute a conviction.  *Supra* at 9-10; *see, e.g.*, Md. Code Ann., Pub. Safety §§ 5-133(b)(1), 5-101(b-1)(1) (for the purposes of restrictions on possession of regulated firearms, the definition of "convicted of a disqualifying crime" includes "a case in which a person received probation before judgment for a crime of violence" or "in a domestically related crime").

The creation of these exceptions does not support the majority opinion; rather it demonstrates that the general rule, enshrined not only in the above-cited case law but in the statute itself, is that probation before judgment is *not* a conviction.  Md. Code Ann., Crim. Proc. § 6-220(i)(3) ("Discharge of a defendant under this section

## C. Analysis of FCRA

With this understanding of the nature and purpose of a probation before judgment disposition, I turn to the statute at issue. When analyzing statutes, this court must begin with the text. *Hosp. Temps Corp. v. District of Columbia,* 926 A.2d 131, 136 (D.C. 2007) ("The first step in construing a statute is 'to read the language of the statute and construe its words according to their ordinary sense and plain meaning'" (quoting *Baghini v. D.C. Dep't of Emp. Servs.*, 525 A.2d 1027, 1030 (D.C. 1987)). If the plain language does not unambiguously convey its meaning, we must interpret this text "in a manner that makes sense of the statute as a whole by reference to legislative history and other aids to construction." *McDuffie v. Bd. of Elections*, 300 A.3d 736, 743 (D.C. 2023) (quoting *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1235 (D.C. 2016)).

---

shall be without judgment of conviction and is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime."); *see United States v. Crawford*, 6 Mackey 319, 320 (D.C. 1888) ("Where a general intention is expressed in a statute, and the act also expresses a particular intention incompatible with the general intention, the particular intention shall be considered as an exception."); *District of Columbia v. Linda Pollin Mem'l Hous. Corp.*, 313 A.2d 579, 583 (D.C. 1973) ("General and special provisions [of] a statute should stand together, if possible, and be read together and, if possible, harmonized with a view to giving effect to a consistent legislative policy." (quoting 82 C.J.S. Statutes § 347(b) (1953)).

### 1. Plain Language

FCRA disqualifies individuals from obtaining a firearm registration certificate if, among other things, they have been "convicted of a weapons offense . . . or a felony in this or any other jurisdiction." D.C. Code § 7-2502.03(a)(2). The statute does not define "convicted," and, as the briefs from both MPD and PDS make clear, "convicted"—or "conviction," *see supra* at 12—is inherently ambiguous because it has two possible meanings.

"Convicted" can mean a finding of guilt, or it can mean the entry of a judgment of conviction. *See, e.g.*, *Deal v. United States*, 508 U.S. 129, 131 (1993) (explaining that "'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding"); Conviction, Black's Law Dictionary (12th ed. 2024) (defining conviction as either "the state of having been proved guilty" or the "judgment . . . that a person is guilty of a crime."). If "convicted" in FCRA refers to an assessment of guilt—MPD's argument on appeal, *see supra* Dissent Part I— then Mr. Porter should lose this appeal. But if "convicted" instead refers to a judgment of conviction, Mr. Porter should prevail. After all, it seems fairly obvious that the disposition of probation *before judgment* cannot be a *judgment* of conviction. MPD has not argued that probation before judgment is a judgment of conviction

(thus effectively conceding the point), and the majority opinion has cited no authority to suggest that it is, *see supra* Dissent Part II.B.

The majority opinion agrees that the statutory term "convicted" is ambiguous, but it declines to resolve the question presented by the parties and the text of the statute. Instead, the majority opinion (1) walks away from MPD's finding-of-guilt argument, "express[ing] no view about it," *supra* at 12-13, (2) assumes without deciding that a finding of guilt is *not* enough to constitute a disqualifying conviction under FCRA and that "something more" is required, *id.* at 13, and then (3) takes up the unargued question of whether the disposition of probation before judgment might be that "something more," *id.* at 13-15; *see also supra* Dissent Part I. But the majority opinion proffers no persuasive authority for the proposition that "convicted" in FCRA means something in between a finding of guilt and a judgment of conviction.[23] Indeed, the reason the parties identified the question presented as a

---

[23] The majority opinion asserts its rejection of this binary view is supported by the Supreme Court's decision in *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983), *see supra* at 37—a decision interpreting a distinct federal statute that has since been legislatively overruled, *see* supra at 28, and that no party cited to us—and disregards the Court's subsequent decision in *Deal*, 508 U.S. at 131 (explaining that "'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding"), which both MPD and PDS identified as an authority on which they chiefly relied.

binary choice between whether the term "convicted" in FCRA means a finding of guilt or a judgment of conviction is because that is the only choice the law supports. Much as the majority may like to will it into being, there is no third way to resolve the ambiguous text of the statute.

## 2. Statutory Context, Statutory Purpose, and Legislative History

Where the text of a particular provision of a statute is ambiguous, this court may find clarity by examining that text in the broader context of the statute as a whole. *Eaglin*, 123 A.3d at 956 ("[S]tatutory interpretation is a holistic endeavor, and, at a minimum, must account for a statute's full text, . . . structure, and subject matter." (quoting *Baltimore v. District of Columbia*, 10 A.3d 1141, 1146 (D.C. 2011)).

The majority highlights the fact that, in addition to disqualifying a person from firearm registration if they have been "convicted of a weapons offense," D.C. Code § 7-2502.03(a)(2), FCRA also disqualifies any person who is "under indictment for a crime of violence or a weapons offense," *id.* § 7-2502.03(a)(3). The "under indictment" provision renders a person temporarily ineligible for registration until the indictment is dismissed, they are acquitted, or they receive a judgment of conviction. *See, e.g.*, *United States v. Saiz*, 797 F.3d 853, 856 (10th Cir. 2015) (a

person remains under indictment until the court renders an adjudication of guilt or dismisses the charges). This disqualification period includes any time between entry of a guilty plea and a judgment, and any time a person is placed on probation as a precursor to receiving a final disposition of probation before judgment. *See id.*; *see also United States v. Valentine,* 401 F.3d 609, 611 (5th Cir. 2005) (A person "who is on probation pursuant to a deferred adjudication of a felony charge remains, as a matter of law, under indictment."); *State v. Frazer*, 375 P.3d 267, 277 (Haw. Ct. App. 2016) (individual serving probation pursuant to conditional discharge remained under indictment). Reading the provision that disqualifies individuals after they are "convicted," D.C. Code § 7-2502.03(a)(2), to begin only when a person receives a judgment of conviction thus fits in with the statute's broader structure by picking up at the moment that the indictment provision, *id.* § 7-2502.03(a)(3), leaves off.

In interpreting this provision to support its novel conception of "convicted," however, the majority opinion focuses on the fact that "[a]n indictment requires only a finding of probable cause," whereas a disposition of probation before judgment requires a guilty plea or finding of guilt beyond a reasonable doubt. *Supra* at 15. The majority opines that "it would be quite strange for the D.C. Council to prohibit firearm registration by people who are under indictment for a disqualifying weapons

offense but not by people who have pleaded guilty to or been found guilty of such an offense, who have agreed not to challenge that judgment of guilt, and who have been sentenced for their conduct." *Id*. at 16. But it is not strange at all.

It makes perfect sense that the legislature would be willing to temporarily impose civil disabilities based upon a temporary status of being under indictment, when a judgment of conviction could result, but would not be willing to permanently impose civil disabilities based on the permanent status of having received a final disposition of probation before judgment, which will never result in a judgment of conviction. *See, e.g.*, *United States v. Rahimi*, 602 U.S. 680, 699 (2024) (holding statute restricting gun possession "so long as the defendant 'is' subject to a restraining order" constitutional in part because it is "temporary"). Further, the legislature was clearly comfortable with leaving some closely-related groups out of FRCA's disqualifying net. For example, the statute treats differently those who are charged with crimes via indictment, who are immediately (but only temporarily) disqualified from obtaining a gun registration certificate, and those who are charged

via information, who are not disqualified unless and until they are convicted.[24]

In addition to placing the text of D.C. Code §§ 7-2502.03(a)(2) in the broader context of the statute, this court should look to the Council's stated purpose in FCRA to "determine whether our interpretation is consistent with legislative intent." *District of Columbia v. Reid*, 104 A.3d 859, 868 (D.C. 2014).

The D.C. Council enacted FCRA for two reasons: "(1) to reduce the potentiality for gun-related crimes and gun-related deaths from occurring within the District of Columbia; and (2) to strengthen the capacity of the District of Columbia government to monitor the traffic in firearms and ammunition within this

---

[24] In its discussion of the indictment provision of the District's FCRA, the majority opinion cites to *Dickerson. Supra* at 16-17. The Court in *Dickerson* interpreted a federal statute disqualifying an applicant "who has been convicted . . . of a crime punishable by imprisonment for a term exceeding one year" from obtaining a license to import, manufacture, or deal in firearms. *Dickerson,* 460 U.S. at 106 (alteration in original) (quoting 18 U.S.C. § 922(g)); *see also id.* at 105-10. The Court did not actually examine the "indictment" provision of the federal statute in depth; it simply observed that "[t]he mere existence of an outstanding indictment is sufficient" to disqualify an applicant, which evidenced Congress's intent to "reach[] far." 460 U.S. at 115-16. I fail to see why the Court's estimation of Congress's purpose in drafting a distinct federal firearms statute weighs against an interpretation of the District's FCRA to temporarily disqualify individuals who are under indictment until they receive a judgment of conviction, and permanently disqualify them thereafter.

jurisdiction." Firearms Control Act of 1975, Report on Bill No. 1-164 before the Committee on the Judiciary and Criminal Law, Council of the District of Columbia, at 2 (April 21, 1976). Interpreting "convicted" to mean a judgment of conviction in no way impedes the second purpose; the District is still able to create and run a registration certificate program to monitor firearms within its boundaries. As for the Council's first purpose, certainly an interpretation of "conviction" as a "judgment of conviction" circumscribes to some slight degree the reach of FCRA; it excludes from disqualification individuals who are not under indictment and do not possess a judgment of conviction.[25] But it is far from clear that this more conservative interpretation of conviction meaningfully compromises the goal "to reduce . . . gun-related crimes and gun-related deaths" in the District. In cases where the guilty plea does not lead to a final judgment of conviction because a court has decided that

---

[25] Presumably, the number of individuals who receive the ultimate disposition of probation before judgment is dwarfed by the number of individuals who would still be disqualified by virtue of possessing a judgment of conviction.

Further, although my interpretation of "conviction" ostensibly allows individuals to register for a firearm after having been charged by information and been found guilty of (or pled to) disqualifying offenses, but before they have been sentenced, the interpretation of "conviction" as a "judgment of conviction" would not meaningfully expand gun registration by this group. In many such cases, the defendants are sentenced on the same day as their determination of guilt or very soon after.

such a judgment is not warranted, as it is legislatively authorized to do, it is hard to draw a direct connection to the statute's purpose to reduce gun-related crimes and deaths. As explained above, the probation before judgment disposition is a pre-judgment diversion mechanism. The individuals who successfully serve their probationary period without incident and are discharged without a final judgment of conviction hardly seem a group that the Council wanted to ensure would be permanently unable to register a firearm, especially when it imposed no restrictions on those individuals charged by information of violent crimes or weapons offenses.[26] The majority observes that these individuals will have been discharged from probation "for reasons other than innocence." *Supra* at 36. But in this respect they are no different from individuals who have received pardons—a group MPD conceded at oral argument should not be deemed to have a disqualifying conviction

---

[26] Again, the majority cites to the Supreme Court's 40-year-old decision in *Dickerson*, asserting that FCRA and the federal firearms statute that the Supreme Court interpreted in that case share the purpose of "keeping firearms out of the hands of persons whom the legislature deemed unsuitable to possess firearms." *Supra* at 17. But the question in this case is whether a person with a diversionary disposition like probation before judgment *should* be deemed to fall into that group of people as defined by FCRA. As to that question *Dickerson* provides little guidance, not only because the Court was interpreting a different firearms statute but also because the opinion in *Dickerson* nowhere acknowledges the distinct purpose of probation before judgment.

under the FCRA. *See* D.C. Code § 24-481.05 (eligibility for clemency in the form of a pardon may be established by a showing of rehabilitation and that the individual would "contribute to the community"; actual innocence not required).

Lastly, this court may augment its interpretation of a statute with a review of the legislative history. *Competitive Enter. Inst.*, 150 A.3d at 1235. The legislative history for FCRA, however, is unilluminating as to the question at hand: at what point does an individual have a disqualifying "conviction" under the statute? The passages cited by the majority simply support the undisputed proposition that the Council wished generally to regulate who could possess a gun in the District and to restrict registration to "persons whose personal and social histories do not indicate a susceptibility on their parts to use any firearm in a manner which would be dangerous to themselves or other persons." *Supra* at 18 (quoting Firearms Control Act of 1975, Report on Bill No. 1-164 before the Committee on the Judiciary and Criminal Law, Council of the District of Columbia, at 21-22 (April 21, 1976)). These passages shed no light on whether a person like Mr. Porter, with a final disposition of probation before judgment, should be deemed such a person.

## D. Constitutional Avoidance

To recap, the statute, on its face, is ambiguous: "conviction" under D.C. Code § 7-2502.03(a)(2) could refer merely to a finding of guilt, or to a judgment of conviction. The majority has declined to embrace MPD's interpretation that a guilty plea alone constitutes a conviction. And the statute as a whole, in conjunction with its purpose and legislative history, can easily be read to require a judgment of conviction—particularly in light of the common law understanding that a judgment of conviction is needed to invoke civil disability consequences, *see supra* Dissent Part II.A. What further persuades me that a disqualifying conviction under FCRA requires a judgment of conviction are the constitutional implications of reading it another way.

"[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the legislature]." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). "In other words, when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the

other should prevail . . . ." *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005). "[A] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916)); *see also Mack*, 6 A.3d at 1233 ("[T]he canon of constitutional avoidance 'is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts.'" (quoting *Fox Television Stations, Inc.*, 566 U.S. at 516)); *Smith v. United States*, 68 A.3d 729, 737 (D.C. 2013) ("[C]ourts are under a general obligation to interpret statutes so as to support their constitutionality." (quoting *District of Columbia v. Gueory*, 376 A.2d 834, 836 (D.C.1977))).

MPD claims that "this case does not present any constitutional questions because [Mr.] Porter has never raised [a constitutional] challenge" to the application of FCRA. To begin with, the canon of constitutional avoidance is a "rule of statutory construction" that courts must abide by, rather than a substantive issue a party must raise. *Edward J. DeBartolo Corp.*, 485 U.S. at 575. But in any event, Mr. Porter—who has been proceeding without counsel—has said more than enough to trigger a discussion of this canon. *See Black v. D.C. Dep't of Hum. Servs.*, 188 A.3d 840, 847 (D.C. 2018) ("Courts in this jurisdiction are required to construe pro se pleadings

liberally.") Before OAH, Mr. Porter testified that he "want[ed] to be able to own a firearm just like everyone else, just like all of you American citizens" and that MPD was "doing everything in their power to stop [him] from being able to carry a firearm which is [his] right as an American." And in his brief before this court, Mr. Porter appears to invoke *New York State Rifle & Pistol Association, Inc. v Bruen*, 597 U.S. 1 (2022), noting: "[T]he Supreme Court struck down a New York law requiring people to demonstrate a particular need for carrying a gun in order to get a license . . . . The justices said that requirement violates the Second Amendment."

In the last two decades, the Supreme Court has significantly clarified our understanding of Second Amendment rights. Beginning with *Heller*, the Supreme Court explained that the Second Amendment "confer[s] an individual right to keep and bear arms." 554 U.S. at 595. While the right is "not unlimited," the Court stated that it protects "the inherent right of self-defense" and "necessarily takes certain policy choices off the table." *Id.* at 595, 628, 636. In *Bruen*, the Court further addressed the limits of legislative policymaking with respect to gun possession. *Bruen*, 597 U.S. at 17-19. The government may not enact firearm regulations simply to "promote[] an important interest," such as public safety, unless it can "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. Regulations not grounded in "historical tradition"

violate the right that "ordinary, law-abiding citizens have . . . to carry handguns publicly for their self-defense." *Id.* at 9, 17. And most recently, in *Rahimi*, the Court reaffirmed that the Second Amendment "right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty'" and "applie[s] to ordinary citizens within the home," 602 U.S. at 690 (quoting *McDonald v. Chicago*, 561 U.S. 742, 778 (2010)), even as it clarified that *Bruen*'s "historical tradition" language requires only a "historical analogue," not a "historical twin," and that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed," *id.* at 698, 701.

Interpreting FCRA to permanently disqualify individuals from firearm registration without a final court judgment that they have committed a criminal offense, would raise "grave doubts" about the statute's compliance with the Second Amendment as interpreted by *Heller*, *Bruen*, and *Rahimi*.[27] *Rust*, 500 U.S. at 191. What's more, the Supreme Court has warned against treating the constitutional right to bear arms as "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 597 U.S. at 70 (quoting *McDonald*,

---

[27] *Dickerson*, the case on which the majority so heavily relies, *see supra* at 16-17, 21, 25-28, long-predates *Heller, Bruen*, and *Rahimi*.

561 U.S. at 780). As noted above, jurisdictions across the country have held that statutes imposing civil disabilities based upon a conviction require a *judgment* of conviction, and not a mere finding of guilt. *See supra* Dissent Part II.A (cataloguing cases holding that witnesses could be impeached, individuals could be stripped of the right to vote, and candidates could be disqualified from holding public office based on criminal records, but only after the imposition of a judgment of conviction). Our court should be hesitant to embrace an interpretation of FCRA that would give the constitutionally protected right to bear arms lesser protection than a whole host of other civil liberties.

The majority opinion, however, argues first that when the Council enacted FCRA in 1976—before *Heller* was decided—it would not have thought that it was impinging on an individual's civil liberties by restricting access to gun registration certificates. *Supra* at 19-20. Whether the Council in 1976 understood that the Second Amendment guaranteed an individual right to bear arms is not the relevant question; such a right is clearly recognized today. Although the doctrine of constitutional avoidance is "intended as 'a means of giving effect to [legislative] intent, not of subverting it,'" *Mack*, 6 A.3d at 1234 (quoting *Clark*, 543 U.S. at 382), that is not its only purpose; it also serves to support courts' "general obligation to interpret statutes so as to support their constitutionality." *Smith*, 68 A.3d at 737.

There is little risk of "subverting" the Council's intent here, where interpreting "conviction" to mean "judgment of conviction" is one of two entirely plausible readings of FCRA.

The majority also asserts that the canon of constitutional avoidance is irrelevant because "constitutional concern[s] . . . would persist even if we were to agree with" Mr. Porter and PDS. *Supra* at 23 (first alteration in original) (quoting *J.P.*, 189 A.3d at 222). Specifically, the majority opines that

> whatever limits the Second Amendment may or may not impose on the ability of jurisdictions to preclude firearm registration based on an applicant's prior illegal possession of a firearm, we see no reason to believe that the constitutional analysis would turn on a distinction between [those who received a judgment of conviction and those who received probation before judgment.]

*Id*. at 24. But I disagree that imposing such restrictions on these two different categories of individuals would raise the same constitutional concerns. The Supreme Court has made clear that the Second Amendment does *not* prevent legislatures from imposing restrictions on firearm possession for certain individuals, including those convicted of felonies, *see Heller*, 554 U.S. at 626; *Rahimi*, 602 U.S. at 699, or those who "pose[] a clear threat of physical violence to another," *Rahimi*, 602 U.S. at 698. But the Second Amendment does protect the right of other "ordinary citizens," *id.* at 701-02, "to use arms in defense of hearth and home," *Heller*, 554 U.S. at 635; *see*

*also Bruen*, 597 U.S. at 9-10. A probation before judgment disposition—by its explicit terms meant to protect an individual from the collateral consequences of a criminal conviction, *see* Md. Code Ann., Crim. Proc. § 6-220(i)(3); *see also* D.C. Code Ann. § 48-904.01(e)(1); *supra* Dissent Part II.A.—preserves an individual's status as a law-abiding citizen and carries with it no judicial determination of dangerousness. There is therefore no reason to believe individuals with probation before judgment (and thus *without* a judgment of conviction) fall into one of the narrow categories of individuals who are not entitled to the protections of the Second Amendment. Interpreting FCRA to allow these individuals to register a firearm would avoid grave constitutional doubts that would be raised if the statute were interpreted to disqualify such individuals.[28]

The majority opinion's reliance on *J.P.* and *Ileto* to support its irrelevance argument is misplaced. In *J.P.*, the teenage appellant challenged a court order that he "undergo inpatient mental-health treatment absent consent from [his] parent or

---

[28] To the extent that the majority opinion's vague reference to constitutional concerns "persist[ing]" refers specifically to FRCA disqualification of individuals under indictment, I note again that being under indictment is a *temporary* status. *See supra* Dissent Part II.B.2; *cf. Rahimi*, 602 U.S. at 699 (highlighting the fact that restriction on gun possession at issue in that case was "temporary" and applied "only . . . so long as the defendant 'is' subject to a restraining order").

guardian." 189 A.3d at 214. This court rejected his constitutional avoidance argument, focusing on the fact that his constitutional challenge did not actually turn on his status as a minor; rather he "argue[d] that [the] legislature acted impermissibly by *generally* authorizing potentially lengthy inpatient mental-health treatment of criminal defendants," including adults. *Id.* at 222 (emphasis added). This court thus concluded that "the constitutional concern . . . would persist even if we were to agree . . . that [the statute] cannot be applied to minors." *Id.* In *Ileto v. Glock, Inc.*, which involved the federal Protection of Lawful Commerce in Arms Act, the majority opined that an alternative interpretation of the statute urged by the dissent would raise identical constitutional concerns as those the dissent identified in the majority's interpretation: both interpretations would "abolish[] common-law remedies for a large class of plaintiffs." 565 F.3d 1126, 1143 n.12 (9th Cir. 2009).

In the present case, unlike in *J.P.*, the constitutional concern clearly arises in the context of FCRA's application to an individual in Mr. Porter's position—that is, an individual who has received a disposition of probation before judgment but not a judgment of conviction—rather than the statute as a whole. And unlike in *Ileto*, PDS's interpretation does not "raise[] the identical issue in a slightly different form." *Id.* The "issue" is the statute's application to individuals without a judgment of conviction; adopting the interpretation urged by PDS would sidestep that issue

entirely, and the majority opinion has not identified any new constitutional problems it would create.

*          *          *

In sum, the meaning of "conviction" under D.C. Code § 7-2502.03(a)(2) is ambiguous: it could mean merely a finding of guilt or it could require a judgment of conviction. The text, broader statutory context, and legislative history give us little guidance in resolving that ambiguity. But interpreting FCRA to disqualify only individuals with a judgment of conviction has one powerful advantage: it would exclude from FCRA's ambit individuals like Mr. Porter who received a diversionary disposition of probation before judgment precisely to avoid the direct and collateral consequences of a criminal conviction—that is, so that they could be effectively restored to the status of "ordinary," "law-abiding" citizens, with the concomitant Second Amendment right "to use arms in defense of hearth and home." *Rahimi*, 602 U.S. at 701-02; *Heller*, 554 U.S. at 635. Thus by interpreting a disqualifying "conviction" to require a judgment of conviction, we avoid addressing whether the scope of FCRA runs afoul of the constitution. For these reasons, I would affirm on other grounds the decision of the OAH reversing MPD's denial of Mr. Porter's

application to register a gun.[29]

---

[29] If "conviction" under D.C. Code § 7-2502.03(a)(2) requires nothing less than a judgment of conviction, there is no need to consider the effects, if any, of the ultimate expungement of Mr. Porter's record.